693 P.2d 1112

STATE of Idaho, Plaintiff-Respondent,

v.

Norman Glenn RUTHERFORD,
Defendant-Appellant.

No. 15364.

Court of Appeals of Idaho.

Jan. 3, 1985.

912

Randy J. Stoker, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Norman Rutherford was charged in Jerome County with the crimes of lewd and lascivious conduct with a minor, second degree burglary and grand theft. Another lewd and lascivious charge was pending in Twin Falls County. As the result of a plea bargain, Rutherford pled guilty to the lewd and lascivious conduct charge in Jerome County and the state agreed to drop the other charges. The plea bargain agreement also provided that the state would not affirmatively recommend a life sentence, which is the maximum penalty for lewd and lascivious conduct. *See* I.C. § 18–6607 (amended and redesignated as I.C. § 18–1508 in 1984). At the sentencing hearing, however, the state specifically recommended a fixed life sentence. The district judge sentenced Rutherford to an indeterminate life sentence. Rutherford appeals from the judgment of conviction, raising two issues: (1) Is Rutherford entitled to specific performance of the plea bargain agreement? and (2) Did the judge abuse his discretion in imposing an indeterminate life sentence? Because of our decision on the first issue, we do not reach the second.

In October 1983 in Jerome County, Rutherford appeared for arraignment in district court. He entered a plea of guilty to lewd and lascivious conduct. After questioning Rutherford the court found there was a factual basis for the plea and that the plea was free and voluntary. Rutherford's attorney then informed the court as follows:

MR. STOKER [defendant's attorney]: ... In light of the seriousness of this matter, I think this record should reflect that there were some plea negotiations that went on in this matter, which consist of the following:

A similar charge was pending in Twin Falls County, which was dismissed by the Twin Falls Prosecutor, with the

understanding that Mr. Rutherford would enter a plea to this charge. I have not investigated the merits of that case. The Twin Falls Public Defender's office was appointed. I don't know whether it was a good case, a bad case, or whatever; but I know that that was part of the plea negotiations. Furthermore, the Jerome County Prosecutor has agreed, upon this Court's acceptance of this plea, to dismiss the companion burglary and theft cases; and I assume that is why they are still pending in Magistrate Court.

THE COURT: They haven't been sent up yet.

MR. STOKER: I further advise the Court, and I appreciate this Court is not to be bound by sentencing recommendations, from time to time I will attempt to define the State's position with regard to that, however. Mr. Adamson has advised me that he will not affirmatively recommend the life sentence on this case, which does not mean that he will not recommend incarceration. The State will simply not take the position as to any particular length of sentence, as I understand it, at least not a life sentence. Is that correct, Counsel?

MR. ADAMSON [state's attorney]: That's correct.

MR. STOKER: I have advised Mr. Rutherford that, based upon what I know of his background, the record which he has advised me of, that there is a substantial probability of a long period of incarceration, in this case; and I hope that I have explained to him, that to his satisfaction, so that he understands this is, in fact, a serious charge.

The court did not question Rutherford about his understanding of the plea bargain agreement. The court did order a presentence report and a psychiatric evaluation.

Rutherford next appeared in district court on December 27 at the sentencing hearing with his attorney. The state's attorney, however, was not the same prosecutor who had been present at the arraign-ment in October. Rutherford's attorney noted that the presentence report recommended incarceration for "a lengthy determinate period of time." He anticipated that the prosecutor would make a similar recommendation. He argued against a "fixed" sentence, urging the court to impose some indeterminate sentence. The prosecutor in turn discussed the psychiatric report and the other presentence information. He concluded with a recommendation for a determinate life sentence of imprisonment. Both Rutherford and his counsel had the opportunity to again speak to the court. Neither objected to the prosecutor's recommendation but both again urged that a fixed life sentence was not appropriate. As previously noted, the court imposed an indeterminate life sentence.

▮▮▮ The disposition of criminal charges by agreement between the prosecutor and the accused has been recognized by the United States Supreme Court as an important component of our system of justice. *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). Since a guilty plea waives certain constitutional rights, "a defendant is constitutionally entitled to relief when the state breaches a promise made to him in return for a plea of guilty." *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981). This rule is based upon the principle that a guilty plea, to be valid, must be both voluntary and intelligent. "Thus, only when it develops that the defendant was not fairly appraised of its consequences can his plea be challenged under the Due Process Clause." *Mabry v. Johnson*, —— U.S. ——, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). In other words, "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." *Id.*

▮▮▮ In this appeal the state contends that the "promise" not to recommend a specific sentence was not part of the agreement at all, but was merely a statement of

intention. As such, according to the state, it was not part of the inducement which produced the guilty plea. *See Santobello v. New York, supra.* In any event, the state argues a mere statement of intention is not binding. The state urges that the prosecutor could, upon reviewing the presentence report and psychological evaluations, change his position on what kind of a sentence he would recommend. A similar argument was made by the state in the case of *Matter of Palodichuk*, 22 Wash. App. 107, 589 P.2d 269 (1978). There the court said:

> Under the reasoning of *Santobello v. New York, supra,* and *United States v. Brown, supra,* [500 F.2d 375 (4th Cir. 1974)], petitioner had a right analogous to a contract right once the plea bargain was entered; in exchange for his renunciation of his right to jury trial, the petitioner had a right to insist that the prosecutor adhere to the terms of the agreement and recommend probation. As in the law of contracts, a party to an agreement cannot refuse to adhere to the terms of a bargain because it later discovers information which may have caused it to enter a different bargain without suffering the consequences of a breach.

*Id.* at 271. We agree. *See also United States v. Carrillo,* 709 F.2d 35 (9th Cir. 1983) (applying contract law standards to plea bargain agreements).

■ Aside from the brief dialogue we have quoted, the record is devoid of any details of the plea bargain agreement. The sentencing judge, of course, does not participate in the actual negotiations between the defendant and the prosecutor, and he can therefore know only what is revealed by the parties. In addition, an appellate court can know only what is revealed on the record. It is therefore incumbent upon the attorneys to state the agreement in its entirety on the record, and in a clear and coherent manner. I.C.R. 11(c)(5).

■ It is equally important that the record discloses the defendant's understanding of the terms of the plea bargain agreement. It is not necessary that the plea bargain agreement be in writing and be signed by the attorneys and by the defendant, although this is one permissible way of making a record and of showing the defendant's understanding and acceptance of the terms. Even then it may be necessary for the sentencing judge to query the defendant about his understanding of the contents of the agreement. Where the terms of the plea bargain agreement are merely orally stated on the record by one of the attorneys the court should—by specific inquiries to the defendant—establish that the defendant both understands and agrees to the terms. We can only repeat the sound admonition of our Supreme Court in *State v. Colyer,* 98 Idaho 32, 36, 557 P.2d 626, 630 (1976) that, "[b]y conducting this type of thorough inquiry on the record, the trial court can insulate the guilty plea as much as possible from collateral attack." Specifically, "the [sentencing] court should inform [the defendant] that the court is not bound by any recommendation from the prosecutor as to the sentence to impose." *Id.* See also I.C.R. 11(c)(5).

■ In some instances where the nature of the plea bargain is disputed and the record on appeal does not clearly disclose the terms of the plea bargain, it might be appropriate for an appellate court to remand to the district court for an evidentiary hearing and specific findings. We do not believe this is such a case. From our review of the record, particularly the statements of defense counsel at the sentencing hearing and the response of the prosecuting attorney which we have quoted, we believe the state is in no position to contend that the prosecutor was free to make a recommendation to the sentencing judge for a fixed life sentence of imprisonment. Assuming, but not deciding, that Rutherford has the burden on appeal to show both the terms of the plea bargain agreement and that the state failed to comply with its agreement, we hold that Rutherford has carried his burden.

■ The state next contends that Rutherford's failure to object to the breach of the agreement precludes him from raising the issue on appeal. However, "[i]n the case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial." *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). Whether the failure of the state to live up to its agreement arising out of a plea bargain is fundamental error is a question never before decided in Idaho.

■ "Fundamental error" is an amorphous concept which is difficult to define and even more difficult to apply. In Idaho, it at least means error "which has deprived appellant of due process." *State v. Bylama*, 103 Idaho 472, 475, 649 P.2d 1228, 1231 (Ct.App.1982). An Indiana court has given a more detailed definition: "Fundamental or plain error results only where a statement is made or an act is done which results in prejudicial error that goes to the heart of a party's case and where that statement or act is wholly outside of the preventive or corrective powers of that party." *United Farm Bureau Family Life Ins. v. Fultz*, 176 Ind.App. 217, 375 N.E.2d 601, 611 (1978). For reasons which we set out below, we hold that the error in this case was "wholly outside of the preventive or corrective powers" of Rutherford and that it therefore constitutes fundamental error.

In *Santobello v. New York, supra,* defense counsel objected immediately when the state made a recommendation in violation of the plea bargain agreement. The sentencing judge replied: "I am not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence, and there is no need to have any testimony. It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do." The judge went on to outline his reasons for imposing the particular sentence— which was the same sentence recommended by the state. The United States Supreme Court, although assuming the district judge spoke accurately in saying that the state's recommendation did not influence him, emphasized "that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *Santobello v. New York*, 404 U.S. at 263, 92 S.Ct. at 499. The Court concluded "that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration." *Id.* at 262, 92 S.Ct. at 498.

■ In *Santobello*, like the present case, the breach of the agreement by the state may have been inadvertent because the prosecutor who appeared at the sentencing hearing was different from the prosecutor who represented the state in the earlier plea negotiations. However, *"Santobello* holds that a criminal defendant is deprived of a constitutional right if the prosecutor's promise in a plea bargain agreement is not kept, even where the breach is inadvertent." *Pierre v. Thompson*, 666 F.2d 424, 426 (9th Cir.1982); *Matter of Palodichuk*, 22 Wash.App. 107, 589 P.2d 269 (1978).

■ A guilty plea involves the waiver of several fundamental rights, but only a knowing and voluntary plea will constitute such an important waiver. Mere silence or the failure to object will not suffice. Since *Santobello* a myriad of state and federal courts have in one way or another agreed with the statement of Justice Marshall that, "[w]hen a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea." *Santobello v. New York*, 404 U.S. at 268, 92 S.Ct. at 502 (concurring and dissenting opinion of Justice Marshall).

■ We hold that a breach of a plea bargain agreement by the state affects the voluntariness of the guilty plea and is fundamental error. We conclude that the mere failure to object to such error in the

district court does not waive the right to raise the issue for the first time on appeal.

 Of course, not all error, even fundamental error, demands reversal. *See State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). Fundamental error can still be harmless error. Indeed, the Court in *Santobello* required that a guilty plea rest in a "significant degree on a promise or agreement of the prosecutor, *so that it can be said to be part of the inducement or consideration.*" *Santobello v. New York*, 404 U.S. at 262, 92 S.Ct. at 498 (emphasis added). Thus, not all cases in which a prosecutor violates a plea bargain agreement will result in a remand to the trial court. Our Supreme Court has held that "[t]he standard for determining whether error of constitutional dimension is 'harmless,' as set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is 'that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *State v. LePage*, 102 Idaho 387, 393, 630 P.2d 674, 680 (1981), *cert. denied*, 454 U.S. 1051, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). In the present case, we cannot say the state's promise not to recommend a life sentence had no effect on Rutherford's decision to plead guilty. The error was not harmless beyond a reasonable doubt. Rutherford is entitled to relief.

▮ The Supreme Court has indicated there are a variety of constitutionally acceptable modes of relief. For example, a defendant may be entitled to specific performance of the plea bargain agreement, which would entail resentencing by a different district judge. A defendant may also be permitted to withdraw his guilty plea and go to trial on all the original charges. *Santobello v. New York, supra.* Here, while Rutherford has appealed from his judgment of conviction, he requests only that we order specific performance of the plea bargain agreement. He does not seek to withdraw his guilty plea. Therefore, we need not determine whether and under what circumstances a defendant would be permitted to withdraw his guilty plea. We hold specific performance is an appropriate remedy in this case.

The sentence is vacated and the cause is remanded for proceedings consistent with this opinion.

WALTERS, C.J., and BURNETT, J., concur.