850 P.2d 176

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Iain Colon ROBBINS, Defendant-Appellant.**

**No. 18607.**

Supreme Court of Idaho, Coeur d'Alene, October 1992 Term.

Feb. 11, 1993.

Rehearing Denied May 3, 1993.

Watson & McGee, Wallace, for defendant-appellant. Barry E. Watson (argued).

Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson (argued).

JOHNSON, Justice.

This is a criminal sentencing case.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Iain Colon Robbins pled guilty to a charge of battery with intent to commit rape. Judge Magnuson sentenced Robbins to serve an indeterminate term of ten years, with a minimum term of forty-two months. Robbins appealed this sentence claiming, among other things, that the prosecutor failed to abide by the terms of the plea bargain agreement by not recommending that the trial court retain jurisdiction over the defendant pursuant to I.C. § 19–2601(4).

During the appeal, the state and Robbins presented a stipulation to this Court requesting:

> that the case be remanded to the district court for resentencing, at which sentencing [Robbins] will be entitled to specific performance of the plea agreement, ... that another district judge shall be designated to conduct the sentencing hearing and impose sentence, ... [and that the new district judge] will not be bound by the recommendations as set forth in the plea agreement.

This Court then remanded the case to the trial court and stated that the trial court "shall have jurisdiction to take any action necessary to consider and enter an Order concerning the resentencing of [Robbins] as provided in the Stipulation for Remand."

On remand, Judge Haman conducted the resentencing. He considered an updated presentence investigation report (PSI) that included the original PSI report, new testimony from the victim, and the recommendations of counsel. Judge Haman sentenced Robbins to serve an indeterminate term of fifteen years, with a minimum term of five years.

Robbins appeals the sentence imposed by Judge Haman on the grounds that the trial court violated his right to due process of law by not specifically informing him that he could receive a greater sentence on resentencing and by imposing a greater sentence than Judge Magnuson imposed.

The state has challenged Robbins' right to appeal the imposition of a greater sentence on resentencing, because Robbins did not present this question to the trial court.

## II.

### THIS COURT WILL ADDRESS THE DUE PROCESS ISSUE CONCERNING THE IMPOSITION OF A GREATER SENTENCE ON RESENTENCING UNDER THE FUNDAMENTAL ERROR RULE.

The state asserts that we should not consider Robbins' appeal of the greater sentence imposed on resentencing, because Robbins did not present this question to the trial court. While we agree that this issue was not preserved below, we will address the merits of the issue under the fundamental error rule. Although the state did not challenge the propriety of our addressing the other issue raised by Robbins on appeal, we decline to address Robbins' assertion that the trial court violated his right to due process by not informing him that he could receive a greater sentence on resentencing. This question was not presented to the trial court, and the error, if any, would not be fundamental.

### A. Appeal of Greater Sentence Allowed.

■ The state argues that under this Court's decision in *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991), the Court should not hear the appeal challenging the greater sentence imposed on resentencing because the legality of Robbins' sentence was not presented to the trial court. We first point out that it is a misreading of I.C.R. 35 and *Martin* to construe Robbins' claims of violation of his right to due process in his resentencing as a claim that his sentence was illegal.

*Martin* dealt with the imposition of a sentence that was not authorized by the statute specifying the penalty for driving without privileges, a felony. This was the meaning of "illegal sentence" in that case. This is the same meaning given "illegal sentence" in *State v. Howard*, 122 Idaho 9, 830 P.2d 520 (1992). In *Howard*, the sentence at issue was not authorized by the statute providing the penalty for vehicular manslaughter. The Court held that the sentence was "illegal." *Id.* at 10, 830 P.2d at 521; *see also State v. Lavy*, 121 Idaho 842, 845, 828 P.2d 871, 874 (1992) (sentence imposed in excess of that provided by statute was illegal); *cf. State v. Vetsch*, 101 Idaho 595, 596, 618 P.2d 773, 774 (1980) (fact that defendant received a greater sentence than accomplice does not make the sentence illegal). Even if Robbins' sentence violated his right to due process of law as he asserts, it was not illegal in the sense the term is used in I.C.R. 35 and *Martin*.

The more relevant focus for the issue raised by the state is the basic proposition that underlies our decision in *Martin*. As we said less than four months after that decision:

> The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal. Recently we applied the rule to dismiss the appeal in a case where the state asked us to rule on an issue that was not raised in the trial court. *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991).

*Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (citation omitted).

The fact that Robbins did not raise in the trial court the issue of the constitutionality of imposing a greater sentence does not, however, completely resolve whether we will address this question on appeal. As we recently reiterated:

> We will consider fundamental error in a criminal case, even though no objection was made at trial. In order to determine whether we will consider an issue presented on appeal that was not presented to the trial court, we first must assess whether the error would be fundamental if there were error....
>
> ....
>
> ... An error that goes to the foundation or basis of a defendant's rights is a fundamental error.

*State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992) (citation omitted).

In *Kenner*, we held that if the trial court had violated Kenner's privilege against self-incrimination, this would have been a fundamental error. In this case, we must consider whether the errors Robbins as-

serts the trial court made would be fundamental, if they were errors. In making these decisions, we must determine whether errors such as these go to the foundation or basis of Robbins' rights.

Robbins' due process challenge to the sentence imposed on him by Judge Haman on resentencing is founded on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). If Robbins were correct in his assertion that the greater sentence imposed on resentencing violated his right to be free from a vindictive sentence on resentencing, the error would be fundamental, because it would go to the foundation or basis of Robbins' rights. Therefore, we will address the merits of this issue.

*B. Appeal Concerning Failure to Inform that the Trial Court Might Impose a Greater Sentence not Allowed.*

■ The same is not true, however, of the other issue raised on appeal by Robbins. Robbins claims the trial court violated his right to due process by failing to inform him that it might impose a greater sentence than the original sentence. Robbins presents this issue under the axiom that a defendant's guilty plea must be made voluntarily, knowingly, and intelligently. This mischaracterizes the issue. Robbins did not plead guilty at the resentencing, nor did he request the opportunity to change his plea. His counsel told Judge Haman that Robbins had not selected the option of withdrawing his guilty plea and proceeding to trial, but had instead stipulated to a resentencing before a new judge, with the prosecutor making the recommendation for retained jurisdiction that was part of the plea bargain agreement.

The issue is not whether Robbins pled guilty voluntarily, knowingly, and intelligently, but whether he had a constitutional right to be informed by the trial court that on resentencing the trial court could impose a greater sentence than Robbins had received from Judge Magnuson. Robbins has not presented us with any authority that supports his contention that he had a

due process right to be informed of the possibility of a greater sentence, nor have we discovered any. Therefore, the error, if any, was not fundamental, and we will not address it.

### III.

### THE TRIAL COURT DID NOT VIOLATE ROBBINS' RIGHT TO DUE PROCESS OF LAW BY IMPOSING A GREATER SENTENCE ON RESENTENCING.

■ Robbins asserts that the trial court violated his right to due process of law by ·resentencing him to a term greater than the term originally imposed. We disagree.

Robbins argues that the trial court should not have had the opportunity to resentence Robbins completely. The trial court, he contends, should have only determined whether or not to retain jurisdiction, because that was the part of the original sentencing procedure which the prosecutor failed to honor. To allow resentencing completely, he argues, would discourage defendants from appealing their sentences based on an alleged breach by the prosecution of a plea bargain agreement. In essence, Robbins contends, it would chill defendant's from exercising their right of appeal.

In *Pearce*, the Supreme Court ruled that imposition of a heavier sentence following retrial would violate due process, if the motivation for the heavier sentence were to punish the defendant for getting the original conviction set aside. To protect a defendant from retaliatory motivation, the Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for [the judge's] doing so must affirmatively appear." 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. This rule has been read to "[apply] a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74, 81 (1982).

In a number of cases after *Pearce*, the Supreme Court has limited the effect of the *Pearce* presumption. In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court refused to apply the *Pearce* presumption to Kentucky's two-tiered trial system. The Kentucky court system allowed a defendant a de novo trial from an inferior court's order. The Supreme Court found this system did not have inherent possibilities of vindictiveness and noted that the Kentucky system involved two separate court systems, and the de novo review did not require the higher court to find "fault" in the inferior court. The fact that the higher court knew about the inferior court's sentence was not dispositive. *Colten* also made it clear that the focus of *Pearce* is on the possibility of vindictiveness in sentencing following retrial and not on the possibility of the defendant receiving a greater sentence following retrial. That some defendants may forgo an appeal because they might receive a non-vindictive higher sentence was not a basis for limiting the trial court's legitimate sentencing options.

In *Chaffin v. Stychcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Court refused to apply the *Pearce* presumption where separate juries imposed the sentences. The Court noted that a jury system did not possess the same inherent possibilities of vindictiveness as a system in which a judge imposes sentence. The Court also acknowledged that a jury would not know the length of the prior sentence, was unlikely to have a personal stake in the prior conviction, and would not be sensitive to "institutional interests" that might occasion a higher sentence by a judge desirous of discouraging meritless appeals.

In *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), the Court reversed a state court's application of the *Pearce* presumption where the original sentence was imposed by a jury and the second sentence was imposed by the trial judge. The sentencing judge in *McCullough* was the same judge that presided at the original trial. The Supreme Court noted that the retrial was held because the judge herself found prosecutorial miscon-

duct, that there was no motivation for "self-vindication," and that the defendant chose to be sentenced by the judge instead of a jury. The Supreme Court first found that the *Pearce* presumption did not apply and then commented that even if it did apply, the trial judge had enough additional information at the retrial to satisfy *Pearce*.

In *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court reversed a state court's application of the *Pearce* presumption where the original sentence was based on a guilty plea and the greater sentence followed a full trial. The same judge imposed both sentences. The Supreme Court noted that a full trial would bring out more information about the defendant and the crime than a guilty plea and would give the sentencing judge a fuller appreciation of the nature and extent of the crimes. The Supreme Court held that in order to apply the *Pearce* presumption there must be a "reasonable likelihood" that the trial court's greater sentence was based on actual vindictiveness. The Supreme Court held the Alabama system did not possess a reasonable likelihood of actual vindictiveness.

In the Supreme Court cases following *Pearce*, especially *McCullough* and *Colten*, it is clear that the chance of a greater sentence on appeal was not the basis for concern about vindictiveness expressed in *Pearce*. *Pearce* addressed the means of protecting a defendant from retaliatory motivation on the part of the sentencing judge.

Although all of the Supreme Court cases addressing this issue deal with resentencing after retrial, there is no reason to treat resentencing pursuant to a stipulation to remand any differently than resentencing after retrial.

In this case, a different judge resentenced Robbins on remand. Judge Haman explained the basis for the sentence he imposed. He focused on the gravity of the offense and the objectives of criminal sentencing prescribed by this Court. He acknowledged that the sentence he imposed was more severe than Judge Magnuson's

sentence, but said he did not feel bound by the original sentence. Based on these circumstances, we do not apply the *Pearce* presumption, because there is not a reasonable likelihood that Judge Haman's sentence was based on actual vindictiveness. Robbins received exactly what the stipulation for remand requested—resentencing by a different judge. This removed any reasonable likelihood of actual vindictiveness in the resentencing.

Robbins argues that the concept of vindictiveness in this case arises from the "institutional interests" of a judge within the court system. In *Chaffin*, the "institutional interest" of a sentencing judge is described as how the judge may act, in general, to discourage what the trial judge considers are meritless appeals. In *McCullough*, the Supreme Court rejected as "too speculative" an argument that the sentencing judge would act vindictively merely because the defendant is seeking acquittal or that the trial judge would be "annoyed" at having to sit through a second trial. The Supreme Court stated: "We decline to adopt the view that the judicial temperament of our Nations's trial judges will suddenly change upon the filing of a successful post-trial motion." *Id.* at 139, 106 S.Ct. at 979, 89 L.Ed.2d at 111. Robbins' argument is similar to the argument rejected in *McCullough*.

 In the absence of the *Pearce* presumption, a defendant must prove actual vindictiveness. *Wasman v. United States,* 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424, 433 (1984) ("where the [*Pearce*] presumption does not apply, the defendant must affirmatively prove actual vindictiveness"). The portion of the record upon which Robbins relies to show "pure vindictiveness" does not prove that the Judge Haman was dealing harshly with Robbins because Robbins pursued his right to appeal. Rather, the transcript indicates that it is Judge Haman's practice to deal very harshly with all charges concerning rape. Robbins has not carried the burden of proving actual vindictiveness.

## IV.

## CONCLUSION.

We affirm the sentence imposed on Robbins by Judge Haman.

McDEVITT, C.J. and TROUT, J., concur.

BAKES, J. pro tem. (following retirement on February 1, 1993), concurs in parts I, III, and IV; concurs in the result of part II.

BISTLINE, Justice, dissenting.

## PART I. THE INITIAL BACKGROUND

Robbins raised a challenge to proceedings in regard to the first sentencing, which took place after he agreed to enter a guilty plea, in accord with a plea bargain agreement wherein Robbins so agreed in return for the prosecutor's agreement that the sentence imposed would contain a provision for retained jurisdiction. The understanding was that the retained jurisdiction would allow for Robbins to obtain a psychological examination, to which he also conceded, on the premise that it might thereafter lead to his receiving treatment for mental problems to which he admitted, and which caused him concern.

For some reason the prosecutor did not, or could not, fulfill his commitment; it followed that the sentence imposed upon Robbins by Judge Magnuson did *not* include the rider of retained jurisdiction. Because of that development, Robbins filed an appeal with this Court, and, while we continued to retain jurisdiction, a stipulation that had been prepared by the office of the Idaho Attorney General was filed in this Court. It had been executed by two deputy attorney generals and sent to Robbins' defense counsel, who, in turn, executed it. That stipulation appears in full as Attachment A and is discussed, *infra.*

## PART II. FUNDAMENTAL ERROR AND COMMENDABLE CANDOR

This is a case which to an extent contains "fundamental error"; it is also one which involves "fundamental fairness," or more

accurately, the lack thereof. The "fundamental error" involved is clearly demonstrated by defense counsel's conceded ignorance that his client, Iain Robbins, a sentenced defendant who had been victimized by a prosecutor's broken promise to recommend to the sentencing court that jurisdiction be retained, could receive an increased sentence, should the resentencing court be so inclined. It was at oral argument on defendant's appeal in this Court that defense counsel, Barry Watson, was first made aware that the net result of his inexperience in the criminal practice was seeing his client on resentencing being handed a greater sentence than the one initially imposed by District Judge Magnuson:

> JUSTICE JOHNSON: So, why, to avoid the very problem which you suggest, *wouldn't it have been better to go back before the same district judge* and have the prosecutor, I think maybe you're making more out of the dilemma than really exists.

> MR. WATSON: Well, in retrospect, that may be true, but at the time we had *Santobello* and *Rutherford I*[1] to look at, and both of those cases suggested a different judge. *To be quite honest, I didn't realize that resentencing before the same judge was an alternative.* This is an unusual situation, I would submit to the court, one which even experienced defense attorneys, I don't think, see very often, and we simply referred to the cases we had at the time, and both of those suggested resentencing before a different judge. We had to run with the ball that was tossed to us.

Watson, in so responding to Justice Johnson, candidly was admitting to an apparent prima facie case of malpractice, rising to the level of fundamental error. To Watson's everlasting credit was his utter candor in so advising Justice Johnson of his ignorance. Speaking truthfully to Justice Johnson was the only honorable course,

and, although doing so put defense counsel in a poor light, it did serve the laudable purpose of paving a route which Robbins might follow in appealing his increased sentence as imposed by Judge Haman or in pursuing post conviction relief. Mr. Watson, had he been so inclined, could just as easily been less honest in his above response to Justice Johnson.

## PART III. LACK OF FUNDAMENTAL FAIRNESS ATTRIBUTABLE TO THE STATE

It is beyond cavil that at least two attorneys in the office of the Idaho Attorney General participated in fashioning the stipulation which was then sent to Watson. There is not in the appeal record the slightest indication of any previous conversations or contacts between the two involved deputy attorney generals as one party and Watson as the other. Nor does the record yield any indication that a letter of transmittal accompanied the proposed stipulation which Watson received.

In the majority opinion, Justice Johnson presents his conclusion that we address the merits of this controversy under our well-established fundamental error rule, a salutary rule which I saw evolve during my time on the Court and which was attributable primarily to Chief Justice Bakes.[2] However, having done so, Justice Johnson then concludes that it is not applicable under the circumstances here present. Instead, he arrives at a contrary conclusion relative to Robbins' assertion that the trial court, Judge Haman, violated his right to due process by not informing him that upon resentencing, he could receive a sentence greater than that imposed by Judge Magnuson.

While the appeal from the first sentencing of Robbins was being processed, the office of the Idaho Attorney General, per

---

1. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Rutherford (Rutherford I),* 107 Idaho 910, 693 P.2d 1112 (Ct.App.1985).

2. *State v. Swenor,* 96 Idaho 327, 331–34, 528 P.2d 671, 675–78 (1974) (Bakes, J., dissenting,

McQuade, J., concurring in the dissent); *State v. Haggard,* 94 Idaho 249, 251–52, 486 P.2d 260, 261–62 (1971) (McQuade, C.J., McFadden and Spear, JJ., concurring, and Shepard, J., dissenting in part and concurring in part).

**534**

two deputy attorney generals, filed a stipulation in this Court which had been executed by that office and by Watson. The first paragraph of the stipulation observes that Robbins' brief filed in this Court *raised the issue that the proceedings at the sentencing hearing* were not in accordance with the plea agreement reached by Robbins and the State. The second paragraph of the stipulation noted that the relief then presently asserted by Robbins, because of the State's failure to comply with the plea agreement, was a remand to the district court where Robbins would have an opportunity to withdraw the plea of guilty, which he had entered. The third paragraph is the one deserving the closest attention, the essence thereof being that *the appropriate remedy for violation of the plea agreement is specific performance of the plea agreement.* Therein is found the "ringer" which should readily appeal to any practitioner's innate sense of an injustice being perpetrated:

> [T]his specific performance of the plea agreement would involve *remand of the case to the district court for a new sentencing hearing before a different district judge. See, Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495 [499], 30 L.Ed.2d 427 (1971); *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (Ct.App.1985). *The state and the appellant agree that this remedy is an appropriate resolution of the case.*
>
> . . . .
>
> The parties therefore request that the case be remanded to the district court for resentencing, at which sentencing the appellant will be entitled to specific performance of the plea agreement. Such specific performance will consist of the state's making a recommendation in accordance with the plea agreement. *The parties further stipulate that another district judge shall be designated to conduct the sentencing hearing and impose sentence. The district judge will*

*not be bound by the recommendations as set forth in the plea agreement.*

(Emphasis added.)

It is abundantly clear from Watson's discourse with Justice Johnson that initially he did not fully understand the scope and extent of that stipulation. More particularly, as would appear later at oral argument before this Court, Watson accepted as gospel that case law supported the stipulation's proposition that a "new sentencing hearing before a *different* district judge" was mandatory, *i.e.,* no options or alternatives. The two experienced deputy attorney generals cited *Santobello v. New York* and *State v. Rutherford* [3] in drawing up the stipulation. Only after Watson signed the stipulation and returned it to the deputy attorney generals, who then filed the wholly executed document in this Court, would Watson become belatedly appraised that the *Santobello* opinion did not in actuality require that in such circumstances as those present here, the initial sentencing judge not preside at a resentencing.

Resentencing here only became necessary because the State, in the person of the local prosecuting attorney, had not lived up to a plea agreement which exacted of State its agreement to recommend to Judge Magnuson, the presiding judge at trial and the judge who would sentence Robbins, that Judge Magnuson would also retain jurisdiction. The kicker in this circumstance was the benign beguiling of attorney Watson by the State's counsel into the belief that the *Santobello* opinion of the United States Supreme Court mandated that resentencing must be done before a different judge than the judge who had initially pronounced the sentence imposed upon Robbins.

The opening appeal brief by Robbins filed in this Court after Judge Magnuson had imposed sentence on him, assigned as error the failure of the prosecutor to comply with his part of the plea bargain, *i.e.,* his promise to recommend to Judge Magnuson that whatever the sentence might be,

---

3. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495 (1971); *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (1985); *State v. Rutherford,* 109 Idaho 1016, 712 P.2d 717 (1988).

the district court would retain jurisdiction. That has already been pointed out in the lead opinion and mentioned again herein. The controversy might have been readily resolved but for the warped ingenuity of the State's counsel who had authored and executed the stipulation and then, after obtaining Watson's signature, transmitted it to the clerk of this Court.

As above mentioned, missing from that chronology is any insight or explanation as to preliminary discussions which presumably would have taken place by and between State's counsel and Watson. The stipulation was obviously prepared by counsel for the State and written so as to serve the State's purpose, while at the same time appearing to extend an "offering" to Robbins of "relief" consisting of a remand to the district court, where he would be given the opportunity to withdraw the guilty plea which he had entered. The office stampings which evidence receipt of the Stipulation as it wound its way to this Court illustrate that it was mailed by the originators to Watson on September 10, 1990, signed, and then received back in the Attorney General's office on September 12, fully executed, and thereafter filed in the Idaho Supreme Court on September 13, 1990.

The basic question before us, as seen by this Justice, consists of a question of fairness, or lack thereof, on the part of trial counsel representing the State in district court proceedings and then by State appellate counsel in misleading defense counsel with the aforesaid stipulation. A second question, which naturally ensues, is whether this Court is going to passively approve what facially appears to be an egregious case of overreaching.

Turning to the oral argument presented in this Court by Watson (who was yet unaware that he may have been beguiled):

"MR. WATSON: I would like to initially advise the Court what this case is not about. This case is not one where the issue is abuse of sentencing discretion. We're not claiming that the sentence in this matter is unduly harsh, considering the nature of the offense and the charac-ter of the offender under a doctrine such as *State v. Renke*."

. . . .

"In February of 1990, Judge Magnuson sentenced Mr. Robbins to an indeterminate period of not to exceed ten years, with a minimum of not less than forty-two months. The judgment included language, and I quote, "That defendant be given the opportunity to attend a sexual offender treatment and/or evaluation program as soon as practical prior to his release from custody." But the court did not retain jurisdiction.... [T]he *prosecuting attorney failed to recommend retained jurisdiction at Cottonwood, and, in fact, he recommended the maximum possible sentence of fifteen years.*... [A]ppeal from that judgment and sentence was filed, and the case went before this Court."

"Thereafter, in September of 1990, the Attorney General's office and the defendant, through his attorney, entered into a stipulation for remand ... [which was based upon] the breach of the plea agreement by the prosecuting attorney. The proceedings in this Court were stayed pending a resentencing before a different judge.

Thereafter, the defendant appeared with counsel before Judge Haman in December of 1990 for resentencing. At that proceeding the court reviewed the ... original presentence report, plus a presentence report supplement and update. Sworn testimony again was admitted and arguments of counsel and recommendations were again received. At this hearing the prosecuting attorney did recommend retained jurisdiction pursuant to the plea agreement. However, at the conclusion of this hearing, Judge Haman sentenced the defendant to fifteen years in the Department of Corrections, with a minimum confinement of five years, so that constituted an increase of a year and a half on the minimum and five years on the maximum."

. . . .

"Now, absent the protective measures that I'm suggesting to the Court today, it is our position that the defendant faces a grizzly choice: either accepting the first sentence without requiring the prosecuting attorney to live up to the promise made which induced him to plead guilty, or appealing the breach, or appealing what *Rutherford I* calls the "fundamental error" on behalf of the prosecuting attorney and risking more jail time. Now, if plea agreements are as important as Justice Burger stated in *Santobello*, then I feel that the Court should afford some procedural protections to put some teeth into the enforcement of these plea agreements. Again, I would refer to *North Carolina v. Pearce* and the companion case of *Simpson v. Rice*, a 1969 U.S. Supreme Court decision. Justice Stewart spoke of the importance of protecting the defendant's rights to appeal. He goes on at some length at page 2080 and 2081 of the 89 Supreme Court Reporter decision, and just briefly, he states that a defendant's exercise of the right to appeal must be free and unfettered. Again, I would submit that when you put the defendant in that position of making this choice, it fetters and it encumbers his right to appeal."

. . . .

"JUSTICE JOHNSON: Mr. Watson, I don't find that you've cited *Alabama v. Smith*, decided by the U.S. Supreme Court in 1989. Are you familiar with that case?"

"MR. WATSON: Yes, I am. That, again, one of the cases that is eroding the original holdings of *Santobello*."

"JUSTICE JOHNSON: You would acknowledge that the holding of that case is: *in order to apply the Pearce presumption, so called, there must be a reasonable likelihood that the trial court's higher sentence was based on actual vindictiveness.*"

"MR. WATSON: Yes. We have now shifted from a situation where there is a presumption of vindictiveness, to a situation where the defendant is required to prove actual vindictiveness . . . ."

. . . .

"JUSTICE JOHNSON: Mr. Henderson, I'm sure you've read *State v. Griffin*, issued in August of this year, and the distinction there that where the trial court actually addresses the issue, regardless of how it might have otherwise been preserved, that this Court may address it as one of the issues on appeal. You acknowledge that is perhaps a refinement of the *Martin* rule, or at least, a further illumination of its dimension."

"MR. HENDERSON: Well, I read it that way, yes."

"JUSTICE JOHNSON: And in light of that, what do you make of Judge Haman's comment when he said, "Whatever Judge Magnuson did or did not do is of no importance to me. I have not read, as I said, the transcript of the proceedings and probably that's just as well, because I approach this case as I would approach any case anew *de novo*, if you will, and I will apply my own criteria and my own reasoning to what I think an appropriate sentence should be. As I said, I don't feel bound by Judge Magnuson's sentence. I think he was considerably lenient." Can that not be read as, in effect, a ruling by Judge Haman that there would be no illegality by giving a harsher sentence?

"MR. HENDERSON: I don't think it can be read in context as a ruling on the legal issues which are now being raised on appeal. I think Judge Haman was cognizant of the fact that because of the reasons for the remand to the district court that the proper course for him to take was to insulate himself from the first sentencing proceedings, and therefore, that's what he did. He was making clear, "I haven't read the transcript, I don't care what Judge Magnuson did." And I think that was what he was addressing."

. . . .

"JUSTICE JOHNSON: Isn't it likely that what would have happened with the trial court, is that Judge Haman would have said, "You say you don't understand that those could be the maximum penalties, what do you understand?" And if the defendant had said, "I can't get more than Judge Magnuson gave me,

and I'm hoping to get retained jurisdiction in addition," then the issue would have been framed, so maybe it was the defendant's obligation at that point to raise the issue."

"MR. HENDERSON: Well, that brings us back kind of to where we are with regard to raising of the issue, at least with regard to this portion of the case. There was nothing said, either by the defendant, obviously at that point, or by defense counsel throughout those proceedings, that indicated that they had any different impression or that the defendant had to be given some additional information before sentencing could proceed. And I think certainly with regard to that aspect of the issue, it is something that simply isn't framed on the basis of this record. The defendant was informed of the maximum penalty and acknowledged that he understood it."

"JUSTICE JOHNSON: It might be a possible way to deal with this issue, to say the issue was not preserved and therefore we won't address it?"

"MR. HENDERSON: Well, at least with regard to that aspect, yes. So, we'd ask that the judgment and sentencing imposed by Judge Haman be affirmed. Thank you."

. . . .

"MR. WATSON: I would like to take a few moments to address the second issue of our appeal, and that is what we contend is the lack of record showing that the defendant knew he was walking into a situation where he could get more than the ten years that was previously structured by Judge Magnuson. As I stated before, the stipulation for remand was silent on that issue specifically; it simply stated that the resentencing judge would not be bound by any plea agreement. I would submit that on the status of this record, the most we can infer that the defendant knew was that he might again not get a rider. *But did he know that he might get an additional five years?* I would submit that on the record that we have, on page 5 of the transcript, the answer is no. First, the court at line 13,

states generally speaking at the outset, "I do as I have already done, remind the defendant of the potential penalties that can be assessed. Do you understand those, Mr. Robbins," and then at line 17, clearly, Mr. Robbins wasn't listening or didn't hear, and said, "Excuse me?" At that point the court rephrases and changes the question or the statement and says, "As matters stand right now, you have plead guilty to the crime of battery with the intent to commit the crime of rape. Do you understand that?" His response, "Yeah." The second question I think is important. "I just need to remind you that that is a crime that carries a maximum possible penalty of up to fifteen years imprisonment and a possible fine of up to $5000. Do you understand that?" "Yeah." Then he goes on to talk about the recommendations and he understands that the Court isn't bound by the recommendations, but nothing else is said until the end of the sentencing proceeding when a greater sentence is pronounced about the *de novo* and starting all over anew, and so on. . . . I don't think we can take the proceedings in a vacuum in that way. I would submit that due to the vagaries of the case law on this subject, where we're coming back on a remand for resentencing, *it would be a more appropriate procedure for the court to specifically advise the defendant that, "you understand I'm not bound by the prior sentence, and that I can give you up to five years more additional time on the top and more on the bottom, as well."* . . . And I would cite *King v. State* that is on page 7 of my reply brief, *"That a plea of guilty shown to have been unfairly obtained or given through ignorance, fear, or inadvertence, will not withstand judicial scrutiny."* And, *Lockhard v. State,* 92 Idaho 813 [451 P.2d 1014]. *"Idaho has long adhered to the principle that a plea of guilty must be made freely, voluntarily, and with an understanding of the consequences attendant upon such a plea."* I think in this case that if the defendant were to

intelligently proceed with a resentencing, he should clearly know that one of the consequences of proceeding in that manner is that he could get a more harsh sentence than that which he received the first time around. There was no specific questioning of the defendant, at all, regarding the plea agreement, or regarding his understanding of the court's sentencing options. I think its important to point out that this defendant was twenty-four or twenty-five years old at the time of the first and second sentencing, this was his first felony proceeding, the presentence investigation report that the court has indicates that he had a ninth grade education, he did receive a GED equivalency, the psychological evaluation shows he had an IQ of 108, which is in the 70th percentile or average, and as I stated before, I would submit that many experienced lawyers are not completely aware that you can get an increased punishment under certain circumstances on resentencing, let alone a defendant with this kind of background. So, it would be our position that if the Court decides due process prevents a more harsh penalty, that it should instruct the trial court to resentence the defendant but limit the maximum time to the first, that given on the first judgment and sentence. If the Court decides that due process does not prevent a more harsh penalty, then I think that the case should be remanded and have the trial court advise the defendant of what the options are, clearly, and make sure that he makes a knowing and intelligent choice to either accept the first judgment and sentence with the broken plea agreement, or withdraw his plea and go to trial on the original charges, that would still be an option, or go forward with the resentencing, but at least knowing at that point, he is risking receiving more time."

. . . .

"JUSTICE JOHNSON: ... And I'm concerned here with the status of the record as to the preservation of these issues, except for that passage that I read from Judge Haman's comments. I don't find any assertion of the due process challenges at the trial court level, are there?"

"MR. WATSON: Those were not asserted at the trial court level, no."

"JUSTICE JOHNSON: How, then, can we address them?"

"MR. WATSON: I think that those arise to a fundamental level in *State v. Rutherford,* particularly the first *Rutherford* decision, considered the State's, that they are fundamental in nature and can be raised on appeal even if not objected to. 107 Idaho 910 [693 P.2d 1112]. Such fundamental..."

"JUSTICE JOHNSON: *Martin* really isn't involved here, because you acknowledge that they weren't preserved when you simply assert the fundamental error rule which wasn't discussed at all in *Martin.*"

"MR. WATSON: Yes. As just one final aside, on the issues of vindictiveness and the fears that defendants have on proceeding with appeals if they're concerned about getting more punishment, I think that *North Carolina v. Pearce* has to be read a bit more closely. I think that the court there, Justice Stewart, there was focusing more on the fear of possible vindictiveness and the chilling effect that that has on proceedings to rectify wrongs than in the actuality of vindictiveness itself. The fact that footnote 20 of the opinion, the court specifically states, "The existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case, but data have been collected to show that increased sentences on reconviction are far from rare," and then they go on to cite a letter that an inmate had written to a judge in *Patton v. North Carolina,* basically saying, "Your Honor, I don't want a new trial, I'm afraid of more time." That's what we have here. We have a situation where the defendant is put in that grizzly option of, "Do I want to enforce the agreement that was promised to me when I made my plea of guilty and risk more time, or just sit on it and remain mute." I think that in the context of broken plea agreements, there's not a lot of case law on this. *North Carolina v. Pearce* and its proge-

ny talk about vacation of a conviction at a trial, and a retrial, and a reconviction, and those type of things, and those are analogous, but those are still different, and I think there is a dearth of case law in this area and this is a matter of first impression, at least to this final issue in the case at bar."

"Thank you."

(Emphasis added.)

*Pearce* and its progeny speak specifically of vindictiveness directed at a defendant for pursuing a successful appeal. The *Pearce* holding and the logic behind it just as readily applies to vindictiveness affecting a defendant's rights which arise from some other source. In other words, if a sentencing judge's vindictiveness stemmed from animosity towards someone or to something other than the defendant—say, a brother of the defendant, or perhaps another judge—and a result thereof the sentencing judge vindictively imposed a greater sentence than reasonably appeared appropriate, then after a fair and neutral judicial review of that sentence, the increased sentence ought not to stand, else an injustice is perpetrated which the judiciary may be seen as aiding and abetting.

In light of the above, it is instructive to turn to Judge Haman's remarks during Robbins' resentencing:

> Well, first, I think I should make it of record, so that it's clear, that *whatever Judge Magnuson did or did not do is of no importance to me.* I have not read, as I said, the transcript of the proceedings, and probably that's just as well, because I approach this case as I would approach any case anew, de novo, if you will, and I will apply my own criteria and my own reasoning to what I think an appropriate sentence should be.[4]

Judge Haman went on to add, "As I said, I don't feel bound by Judge Magnuson's sentence. I think he was considerably le-

nient," and then handed Robbins the maximum sentence within the law. Obviously, Judge Haman was not satisfied with Judge Magnuson's sentencing of Robbins, in particular, and expressed his antipathy on the record. His doing so under the circumstances then present served no salutary or useful purpose. In a sense he was castigating another judge, one of the same district, unnecessarily, and uncalled for, although one quickly takes note that the State's attorney tendered as an "excuse" that Judge Haman was "isolating" himself from any thing which transpired or was said, or was not said, in the sentencing of Robbins administered by Judge Magnuson. That *mea culpa*, advocated by the particular deputy attorney general who uttered it, did not serve its intended purpose of evaporating the aura of judicial vindictiveness which permeated the courtroom. The majority is thus incorrect in concluding that there was not a reasonable likelihood that the re-sentence was based on vindictiveness, which is a rather strong assertion in light of facts and circumstances, which speak for themselves.

It is readily understood how it might be that an attorney who had not yet been burned by a too ready reliance on another attorney's representations might thereby be taken in, which is not to say that is what happened to Barry Watson, but one cannot help but wonder if that is not exactly what happened. The record clearly demonstrates Watson's dedicated representation of Iain Robbins, which was a formidable task because Robbins was charged with a very serious criminal act of a nature which does not lend itself to any degree of sympathy or empathy, making counsel's role difficult indeed. Nevertheless, Watson did his best.

What *is* for certain here is that a stipulation was drawn in the Idaho Attorney General's office, which fashioned a rather appealing proposition for Robbins: an oppor-

---

4. Here, it may be noted that Judge Haman was disavowing any knowledge of the sentence imposed by Judge Magnuson. This would be highly unusual where both were judges of the same First Judicial District, and both presided in the city of Coeur d'Alene. When Judge Haman added on the phrase relative to the leniency of Judge Magnuson, it is readily assumed that courthouse gossip or the news media had fully informed him as to Judge Magnuson's sentence of Robbins.

tunity to be resentenced by a "different" judge, which terminology was borrowed by the Attorney General's office from *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, which case is not too much the equivalent of the scenario of Robbins' situation.

Paragraph 3 of the stipulation concocted by the Attorney General's office in recognition of the admitted violation of the plea agreement, is correctly stated to be specific performance of the violated plea agreement. What is not correctly stated and is misleading is the following statement that "[t]his would involve remand of the case to the district court for a new sentencing hearing *before a different district judge. See Santobello v. New York*, 404 U.S. 257; 92 S.Ct. 495; 30 L.Ed.2d 427 (1971)." A reasonably close reading of *Santobello* does *not* support the State's intimation that a new sentencing hearing necessarily must be before a different district judge. What the court in *Santobello* said is this:

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation had not influenced him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there by specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty.[2] We emphasize that this is in no sense to question the fairness of the sentencing judge;

the fault here rests on the prosecutor, not on the sentencing judge.

> [2] If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts.

*Santobello*, 404 U.S. at 92 S.Ct. at 499.

*State v. Rutherford*, 107 Idaho 910, 693 P.2d 1112 (1985), is on a par with *Santobello*, and in fact relies upon it at some length:

> "The disposition of criminal charges by agreement between the prosecutor and the accused has been recognized by the United States Supreme Court as an important component of our system of justice. *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). Since a guilty plea waives certain constitutional rights, 'a defendant is constitutionally entitled to relief when the state breaches a promise made to him in return for a plea of guilty.' *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981). This rule is based upon the principle that a guilty plea, to be valid, must be both voluntary and intelligent. *'Thus, only when it develops that the defendant was not fairly apprised for its consequences can his plea be challenged under the Due Process Clause.' Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). In other words, 'when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand.' *Id.*"

> "In this appeal the state contends that the 'promise' not to recommend a specific sentence was not part of the agreement at all, but was merely a statement of intention. As such, according to the state, it was not part of the inducement which produced the guilty plea. *See Santobello v. New York, supra*. In any event, the state argues a mere statement of intention is not binding. The state urges that the prosecutor could, upon reviewing the presentence report and psychological evaluations, change his position on what kind of a sentence he would recommend. A similar argument was made by the state in the case of *Matter of Palodichuk*, 22 Wash.App.

107, 589 P.2d 269 (1978). There the court said:"

> Under the reasoning of *Santobello v. New York, supra,* and *United States v. Brown, supra,* [500 F.2d 375 (4th Cir. 1974)], petitioner had a right analogous to a contract right once the plea bargain was entered; in exchange for his renunciation of his right to jury trial, the petitioner had a right to insist that the prosecutor adhere to the terms of the agreement and recommend probation. As in the law of contracts, a party to an agreement cannot refuse to adhere to the terms of a bargain because it later discovers information which may have caused it to enter a different bargain without suffering the consequences of a breach.

"*Id.* [589 P.2d] at 271. We agree. *See also United States v. Carrillo,* 709 F.2d 35 (9th Cir.1983) (applying contract law standards to plea bargain agreements)."

"Aside from the brief dialogue we have quoted, the record is devoid of any details of the plea bargain agreement. The sentencing judge, of course, does not participate in the actual negotiations between the defendant and the prosecutor, and he can therefore know only what is revealed by the parties. In addition, an appellate court can know only what is revealed on the record. It is therefore incumbent upon the attorneys to state the agreement in its entirety on the record, and in a clear and coherent manner. I.C.R. 11(c)(5)."

"It is equally important that the record discloses the defendant's understanding of the terms of the plea bargain agreement. It is not necessary that the plea bargain agreement be in writing and be signed by the attorneys and by the defendant, although this is one permissible way of making a record and of showing the defendant's understanding and acceptance of the terms. Even then it may be necessary for the sentencing judge to query the defendant about his understanding of the contents of the agreement. Where the terms of the plea bargain agreement are merely orally stated on the record by one of the attorneys the court should—by specific in-quiries to the defendant—establish that the defendant both understands and agrees to the terms. We can only repeat the sound admonition of our Supreme Court in *State v. Colyer,* 98 Idaho 32, 36, 557 P.2d 626, 630 (1976), that, '[b]y conducting this type of thorough inquiry on the record, the trial court can insulate the guilty plea as much as possible from collateral attack.' Specifically, 'the [sentencing] court should inform [the defendant] that the court is not bound by any recommendation from the prosecutor as to the sentence to impose.' *Id. See also* I.C.R. 11(c)(5)."

"In some instances where the nature of the plea bargain is disputed and the record on appeal does not clearly disclose the terms of the plea bargain, it might be appropriate for an appellate court to remand to the district court for an evidentiary hearing and specific findings. We do not believe this is such a case. From our review of the record, particularly the statements of defense counsel at the sentencing hearing and the response of the prosecuting attorney which we have quoted, we believe the state is in no position to contend that the prosecutor was free to make a recommendation to the sentencing judge for a fixed life sentence of imprisonment. Assuming, but not deciding, that Rutherford has the burden on appeal to show both the terms of the plea bargain agreement and that the state failed to comply with its agreement, we hold that Rutherford has carried his burden."

"The state next contends that Rutherford's failure to object to the breach of the agreement precludes him from raising the issue on appeal. However, '[i]n the case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial.' *State v. Haggard,* 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). Whether the failure of the state to live up to its agreement arising out of a plea bargain is fundamental error is a question never before decided in Idaho."

" 'Fundamental error' is an amorphous concept which is difficult to define and even more difficult to apply. In Idaho, it

at least means error 'which has deprived appellant of due process.' *State v. Bylama,* 103 Idaho 472, 475, 649 P.2d 1228, 1231 (Ct.App.1982). An Indiana court has given a more detailed definition: 'Fundamental or plain error results only where a statement is made or an act is done which results in prejudicial error that goes to the heart of a party's case and where that statement or act wholly outside of the preventative or corrective powers of that party.' *United Farm Bureau Family Life Ins. v. Fultz,* 176 Ind.App. 217, 375 N.E.2d 601, 611 (1978). For reasons which we set out below, we hold that the error in this case was 'wholly outside of the preventative or corrective powers' of Rutherford and that it therefore constitutes fundamental error."

"In *Santobello v. New York, supra,* defense counsel objected immediately when the state made a recommendation in violation of the plea bargain agreement. The sentencing judge replied: 'I am not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence, and there is no need to have any testimony. It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do.' The judge went on to outline his reasons for imposing the particular sentence—which was the same sentence recommended by the state. The United States Supreme Court, although assuming the district judge spoke accurately in saying that the state's recommendation did not influence him, emphasized 'that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.' *Santobello v. New York,* 404 U.S. at 263, 92 S.Ct. at 499. The Court concluded 'that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.' *Id.* at 262, 92 S.Ct. at 498."

"In *Santobello,* like the present case, the breach of the agreement by the state may have been inadvertent because the prosecutor who appeared at the sentencing hearing was different from the prosecutor who represented the state in the earlier plea negotiations. However, '*Santobello* holds that a criminal defendant is deprived of a constitutional right if the prosecutor's promise in a plea bargain agreement is not kept, even where the breach is inadvertent.' *Pierre v. Thompson,* 666 F.2d 424, 426 (9th Cir. 1982); *Matter of Palodichuk,* 22 Wash. App. 107, 589 P.2d 269 (1978)."

"A guilty plea involves the waiver of several fundamental rights, but only a knowing and voluntary plea will constitute such an important waiver. Mere silence or the failure to object will not suffice. Since *Santobello* a myriad of state and federal courts have in one way or another agreed with the statement of Justice Marshall that, '[w]hen a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea.' *Santobello v. New York,* 404 U.S. at 268, 92 S.Ct. at 502 (concurring and dissenting opinion of Justice Marshall)."

"We hold that a breach of a plea bargain agreement by the state affects the voluntariness of the guilty plea and is fundamental error. We conclude that the mere failure to object to such error in the district court does not waive the right to raise the issue for the first time on appeal."

"Of course, not all error, even fundamental error, demands reversal. *See State v. Urquhart,* 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). Fundamental error can still be harmless error. Indeed, the Court in *Santobello* required that a guilty plea rest in a 'significant degree on a promise or agreement of the prosecutor, *so that it can be said to be part of the inducement or consideration.' Santobello v. New York,* 404 U.S. at 262, 92 S.Ct. at 498 (emphasis added). Thus, not all cases in which a prosecutor violates a plea bargain agreement will result in a remand to the trial court. Our Supreme Court has held that '[t]he standard for determining whether error of constitutional dimension is "harmless" as set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is "that before a federal consti-

tutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." ' *State v. LePage*, 102 Idaho 387, 393, 630 P.2d 674, 689 (1981), *cert. denied*, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). In the present case, we cannot say the state's promise not to recommend a life sentence had no effect on Rutherford's decision to plead guilty. The error was not harmless beyond a reasonable doubt. Rutherford is entitled to relief."

"The Supreme Court has indicated there are a variety of constitutionally acceptable modes of relief. For example, a defendant may be entitled to specific performance of the plea bargain agreement, which would entail resentencing by a different district judge. A defendant may also be permitted to withdraw his guilty plea and go to trial on all the original charges. *Santobello v. New York*, supra. Here, while Rutherford has appealed from his judgment of conviction, he requests only that we order specific performance of the plea bargain agreement. He does not seek to withdraw his guilty plea. Therefore, we need not determine whether and under what circumstances a defendant would be permitted to withdraw his guilty plea. We hold specific performance is an appropriate remedy in this case."

*State v. Rutherford*, 107 Idaho at 913–16, 693 P.2d at 1115–18.

In view of the foregoing, I am firmly of the view that the final judgment entered herein should be vacated and the cause remanded to the district court with specific directions that the case be assigned to a district judge from outside the First Judicial District for the specific purpose of conducting a hearing wherein the key issue is to first ascertain the circumstances which led to the Attorney General's office preparing the stipulation which interfered with the judicial process insofar as concerns the defendant-appellant Iain Robbins, and thereafter report to this Court for instructions as to any further action to be taken. In the meanwhile, further prosecution of Iain Robbins should be stayed.

## ATTACHMENT A

JIM JONES
Attorney General

MICHAEL KANE
Deputy Attorney General
Chief, Criminal Law Division

MICHAEL A. HENDERSON
Deputy Attorney General
Statehouse, Room 210
Boise, Idaho 83702
Telephone: (208) 334-2400

IN THE SUPREME COURT OF
THE STATE OF IDAHO

STATE OF IDAHO, Plaintiff–Respondent,

vs.

IAIN COLON ROBBINS, Defendant–Appellant.

NO. 18607

The State of Idaho, by and through Michael A. Henderson, Deputy Attorney General, and the appellant, by and through his counsel, Barry E. Watson, hereby enter into the following stipulation:

1. In the appellant's brief filed on July 5, 1990, an issue has been raised as to whether the proceedings at the sentencing hearing were in accordance with the plea agreement between the appellant and the state.

2. In the appellant's brief the relief requested by the appellant for the asserted failure to comply with the plea agreement is remand of the case to the district court to give the defendant an opportunity to withdraw his plea of guilty. (Appellant's Brief, p. 13).

3. One of the appropriate remedies for the type of violation of the plea agreement asserted by the appellant in this case is specific performance of the plea agreement. This would involve remand of the case to the district court for a new sentenc-

ing hearing before a different district judge. *See, Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495 [499], 30 L.Ed.2d 427 (1971); *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (Ct.App.1985). The state and the appellant agree that this remedy is an appropriate resolution of the case.

4. In view of the proposed remand of the case to the district court for resentencing, it is not necessary for the Supreme Court to address the issue of the judge's exercising of discretion in refusing to retain jurisdiction.

5. The parties therefore request that the case be remanded to the district court for resentencing, at which sentencing the appellant will be entitled to specific performance of the plea agreement. Such specific performance will consist of the state's making a recommendation in accordance with the plea agreement. The parties further stipulate that another district judge shall be designated to conduct the sentencing hearing and impose sentence. The district judge will not be bound by the recommendations as set forth in the plea agreement.

DATED this 10th day of September, 1990.

/s/ Michael A. Henderson
MICHAEL A. HENDERSON
Deputy Attorney General
State of Idaho

/s/ Barry E. Watson
BARRY E. WATSON
Attorney for Appellant