49 P.3d 392

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Marilyn K. GERTSCH, Defendant–Appellant.**

No. 27319.

Supreme Court of Idaho,
Boise, November 2001 Term.

April 9, 2002.

Rehearing Denied July 3, 2002.

Nevin, Herzfeld, Benjamin & McKay, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

KIDWELL, Justice.

A jury found Marilyn Gertsch (Gertsch) guilty of racketeering, securities fraud, selling unregistered securities, selling securities when not licensed, and money laundering. Gertsch appealed, arguing that the evidence was insufficient to support the jury's findings, that there were various reversible trial errors, that portions of the indictment failed to properly charge her with an offense, and that her sentences are excessive. On appeal, the State conceded that Gertsch's conviction for racketeering under I.C. § 18–7804(c) should be reversed due to insufficient evidence. The Court of Appeals reversed Gertsch's other convictions, determining that the sale of securities was a requisite element of each offense, and that the evidence was insufficient to establish that element. The State petitioned for review. We affirm Gertsch's convictions and sentences, except for the racketeering conviction and related sentence, under I.C. § 18–7804(c).

### I.

### FACTS AND PROCEDURAL BACKGROUND

The following is adapted from the Facts and Procedural History section in the opinion of the Court of Appeals. This case involves a string of conduct by Gertsch that resulted in a cumulative loss of approximately $130,000 to her victims.

In 1997 Gertsch was employed by an Idaho school district. In that year Gertsch personally paid for a vacation package offered as a prize in a raffle, which was conducted as a scholarship fundraiser by an association of school district employees. The winner of the raffle received, as promised, a vacation paid for by Gertsch. Although Gertsch was not affluent, she continued to offer similar travel giveaways. The beneficiaries would travel at their own expense to locations like Hawaii or the Caribbean, and upon their return they would present their travel expense receipts to Gertsch. Gertsch would then reimburse the traveler for all of the expenses. In order to cover the costs of these giveaways and personal expenses, Gertsch began soliciting money from acquaintances, co-workers and vacation winners for an "investment." She promised these individuals that they would be paid a twenty-five percent interest rate on the money they gave to her. Most were told that this was a quarterly rate—the equivalent of 100 percent per annum.

The other details of this "investment" opportunity, as described by Gertsch, varied from person to person and were always extremely vague. However, a common thread was that Gertsch represented that she had privileged access to some type of special account to which the investments would be applied and from which the twenty-five percent return would be drawn. Some investors

were told that Gertsch operated a travel business, and others were told that she was affiliated with a company "back east." In reality, there was no special account, no travel business, and no company "back east." Much of the money that Gertsch acquired was actually used to pay for the travel packages that Gertsch gave away, but some of the funds were used by Gertsch for her personal benefit.

This case is based upon Gertsch's transactions with seven individuals, each of whom gave thousands of dollars to Gertsch in reliance upon her promises. Some of these people did receive some interest payments or travel benefits. However, Gertsch eventually became unable to sustain her system of acquiring money from new "investors" in order to pay the travel benefits or interest promised to others, and most of the individuals lost all of the money they had relinquished to Gertsch for her alleged investment program.

The prosecution charged Gertsch with racketeering, I.C. §§ 18–7801–7805, securities fraud, I.C. § 30–1403, selling securities when not licensed, I.C. § 30–1406, selling unregistered securities, I.C. § 30–1416, and money laundering, I.C. § 18–8201(2). The charges were based upon the theory that Gertsch was selling securities in the form of investment contracts. After a jury trial, Gertsch was found guilty on all counts and all alleged predicate acts. On February 19, 1999, the district court imposed concurrent sentences for the various offenses, with the longest sentence being a unified twelve-year term with a three-year minimum period of incarceration. On appeal, Gertsch contends that the district court committed a number of errors during her trial. She also argues that the evidence was insufficient to sustain the verdicts, because the State did not prove that the transactions in this case involved investment contracts or that an enterprise existed for the purpose of the racketeering offense. She also argues that her sentences are excessive. On appeal, the State concedes that Gertsch's conviction for racketeering, under I.C. § 18–7804(c), should be reversed for lack of evidence. The Court of Appeals reversed Gertsch's other convictions, based on its de-

termination that the State failed to show that Gertsch sold investment contracts and therefore failed to show that she sold securities. Because the Court of Appeals found this matter to be dispositive, the other issues raised by Gertsch were not addressed. The State petitioned for review.

## II.

### STANDARD OF REVIEW

■ When considering a case on review from the Court of Appeals, this Court does not merely review the correctness of the decision of the Court of Appeals. *Leavitt v. Swain*, 133 Idaho 624, 627, 991 P.2d 349, 352 (1999). Rather, this Court acts as though it is hearing the matter on direct appeal from the decision of the trial court; however, this Court does give serious consideration to the decision of the Court of Appeals. *Id.*

■ When the issue is one of law, this Court has free review. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999). Ordinarily, the standard of review for factual issues relating to a jury conviction is whether there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and the evidence is reviewed in the light most favorable to the State. *State v. Daniels*, 134 Idaho 896, 898, 11 P.3d 1114, 1116 (2000).

In this case the Court of Appeals held that the issue of whether securities were involved in a particular transaction is a question of law that is reviewed *de novo*, citing *State Dept. of Fin. v. Resource Serv. Co., Inc.*, 130 Idaho 877, 950 P.2d 249 (1997). In *Resource Serv. Co., Inc.* this Court agreed with an opinion of the Ninth Circuit Court of Appeals, which provided that "although characterization of a transaction raises questions of both law and fact, the ultimate issue of whether a particular set of facts constitutes [a security] is a question of law." 130 Idaho at 880, 950 P.2d at 252 (citing *United States v. Carman*, 577 F.2d 556, 562 (9th Cir.1978)).

■ However, *Resource Serv. Co., Inc.* was a civil case on appeal from summary judgment, where the facts of the case had

not been presented in their entirety and where all facts and inferences were construed in the light most favorable to the nonmoving party. A different analysis is necessary where, as here, an appellate court is reviewing a final jury verdict rendered after a full trial on the merits. The question of whether a transaction amounts to an investment contract, the particular type of security Gertsch was charged with selling, raises intertwined questions of law and fact. The issue requires the application of legal tests, and as will become apparent in the discussion below, the point at which the inquiry changes from a question of law to a question of fact is often difficult, if not impossible, to identify. However, the detailed nature of the applicable legal tests does not cause the inquiry to be so cumbersome that the jury is incapable of reaching a conclusion. To the contrary, the legal tests break an investment contract into its most basic elements, making it so that the resolution of factual questions leads directly to a legal result. Once a jury has been properly instructed as to the law and has resolved those factual issues, legal characterizations become clear, and the jury is competent to conclude that an investment contract did or did not exist. Consequently, we hold that a properly instructed jury may determine whether an investment contract existed, and appellate review is limited to whether there is sufficient evidence in the record to support the jury's verdict.

### III.

### ANALYSIS

**A. There Is Sufficient Evidence In The Record To Support The Jury's Finding That Gertsch Sold Investment Contracts.**

At the jury trial, the State sought to show that Gertsch had engaged in the sale of the particular type of security known as an investment contract. Under the Idaho Securities Act, Title 30, Chapter 14, Idaho Code, a "security" is defined as:

[A]ny note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract* . . . .

I.C. § 30–1402(12) (emphasis added).

This definition mirrors federal securities law. *See* 15 U.S.C.A. § 77b (West Supp. 2001); *Resource Serv. Co., Inc.*, 130 Idaho at 881, 950 P.2d at 253. The Idaho Securities Act "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact similar statutes and to coordinate the interpretation and administration of this act with the related federal regulations." I.C. § 30–1457. Therefore, in order to determine whether a transaction amounts to the sale of an investment contract under Idaho's statute, this Court's analysis includes an examination of decisions interpreting the comparable federal language. *Resource Serv. Co., Inc.*, 130 Idaho at 881, 950 P.2d at 253.

The United States Supreme Court has set forth the *Howey–Forman* test for the existence of an investment contract: (1) an investment of money, (2) a common enterprise, and (3) a reasonable expectation of profits to be derived from the entrepreneurial or management efforts of others. *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244, 1249–50 (1946); *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621, 632 (1975). This Court has adopted the *Howey–Forman* test to identify investment contracts under the Idaho Securities Act. *Resource Serv. Co., Inc.*, 130 Idaho at 882, 950 P.2d at 254. The district court instructed the jury that an investment contract was the only form of a security relevant to this case, and it properly instructed the jury as to the elements of the *Howey–Forman* test.

In applying the *Howey–Forman* test, it is important to note that "the federal definition of security 'embodies a flexible rather than a static principle.'" *Resource Serv. Co., Inc.*, 130 Idaho at 881, 950 P.2d at 253 (quoting *Howey*, 328 U.S. at 299, 66 S.Ct. at 1203, 90 L.Ed. at 1250). The definition of a security was purposefully made broad so as "to meet the countless and variable schemes devised by those who seek the use of money of others

on the promise of profits." *Howey*, 328 U.S. at 299, 66 S.Ct. at 1103, 90 L.Ed. at 1250.

### 1. Investment of money

■ As this Court explained in *Resource Serv. Co., Inc.*, "[a]n 'investment' typically involves parting with money for the purpose and in the reasonable expectation of making a profit." 130 Idaho at 882, 950 P.2d at 254. This Court further explained that the inquiry should focus on the objectively reasonable expectations of the investors. *Id.* at 882–83, 950 P.2d at 254–55. Because this analysis focuses on the question of whether the investors expected "profits" or something different, it overlaps with the key analysis under the third prong in this case—whether the investors had a "reasonable expectation of profits." Consequently, the question of whether the investors were seeking "profits" or something more akin to interest on a loan will be addressed further under the analysis of the third prong, below. What is clear under this first prong is that the jury, having rendered a guilty verdict after being instructed as to the *Howey–Forman* test, implicitly found that the victims gave money to Gertsch expecting *something* in return. The record contains sufficient evidence to support that finding.

### 2. Common enterprise

■ To determine if a common enterprise exists, courts have looked for either "horizontal commonality" or "vertical commonality." *See, e.g., S.E.C. v. R.G. Reynolds Enters., Inc.*, 952 F.2d 1125, 1134 (9th Cir. 1991). There are no Idaho cases defining horizontal or vertical commonality, other than the Court of Appeals decision in this case, which cited federal authority for the definitions. Federal holdings define horizontal commonality as the situation where each individual investor's fortune is tied to the fortunes of the other investors by the pooling of assets, often combined with the pro-rata distribution of profits. *Reynolds*, 952 F.2d at 1134. Vertical commonality depends upon the relationship between each individual investor and the promoter and occurs where "the fortunes of the investor are interwoven with and dependent on the efforts and suc-

cess of those seeking the investment or of third parties." *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). The existence of either form of commonality is sufficient to demonstrate the existence of a common scheme. *S.E.C. v. Eurobond Exch., Ltd.*, 13 F.3d 1334, 1339 (9th Cir.1994). The district court only instructed the jury regarding vertical commonality.

■ Gertsch asserts that commonality should be measured by her representations to the investors, which she argues can only be characterized as promising them a handsome rate of interest on a loan or account deposit. She emphasizes that she promised her investors a fixed rate of return, that she unconditionally promised to repay them, and that she noted on some documents given to the investors that she was repaying "loans." However, application of the term "security" turns not on the form or characterization of the transaction but on the economic realities underlying the transaction. *Resource Serv. Co., Inc.*, 130 Idaho at 881–82, 950 P.2d at 253–54 (citing *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564, 569 (1967)). It would be nonsensical to evaluate commonality based solely upon Gertsch's representations, when the truth of those representations is directly under attack by way of a fraud charge. Securities laws are designed to help ensure that a potential investor is adequately informed when deciding to invest and is not duped into believing that an investment is risk-free. *See Howey*, 328 U.S. at 299, 66 S.Ct. at 1103, 90 L.Ed. at 1250. As noted by the Seventh Circuit Court of Appeals, "[i]t would be a considerable paradox if the worse the securities fraud, the less applicable the securities law." *S.E.C. v. Lauer*, 52 F.3d 667, 670 (7th Cir.1995). Consequently, it is the true nature of the scheme, as opposed to Gertsch's characterizations or representations, that is the benchmark for the analysis.

■ Gertsch was in truth soliciting money as part of a "Ponzi" scheme. "Generally a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *In re Bonham*, 229 F.3d

750, 759 n. 1 (9th Cir.2000) (internal citation omitted). Gertsch attempts to distinguish her scheme from other "Ponzi" schemes that have been held to be securities, *see, e.g., S.E.C. v. Better Life Club of Am., Inc.,* 995 F.Supp. 167 (D.D.C.1998), by pointing to her representations that the transactions were loans. However, as noted above, her representations are not the benchmark. The evidence demonstrates that, regardless of her original intentions in giving away vacation packages, Gertsch eventually began actively soliciting money from individuals in order to pay artificially high rates of return to individuals who had previously given her money. New investors were often swayed, in part, by the fact that earlier investors had received large returns. The fortunes of the investors were interwoven with Gertsch's success, or lack thereof, in soliciting an infinitely larger or wealthier pool of investors.

The record contains sufficient evidence to support a finding that vertical commonality existed between Gertsch and her victims, in satisfaction of the common enterprise prong.

### 3. Reasonable expectation of profits to be derived from the entrepreneurial or management efforts of others

Under this prong of the *Howey–Forman* test, profits are generally defined as either "capital appreciation resulting from the development of the initial investment . . . or a participation in earnings resulting from the use of investors' funds." *Forman,* 421 U.S. at 852, 95 S.Ct. at 2060, 44 L.Ed.2d at 632. Those profits are derived from the efforts of others, and the third prong is therefore satisfied, if "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *S.E.C. v. Glenn W. Turner Enter., Inc.,* 474 F.2d 476, 482 (9th Cir. 1973). Here, Gertsch's efforts were essential ones affecting the failure or success of the enterprise, and the investors were expecting a participation in earnings resulting from the use of their funds in some "account" or "business."

Gertsch again stresses, as to this prong, the view that the transactions in question were more akin to bank loans than capital investments. Specifically, she argues that the combination of an unconditional promise to repay and a promise of a fixed rate of return absolutely precludes a finding that the investors sought profits.

However, in *United States v. Carman,* 577 F.2d 556, 563 (9th Cir.1978), the court held that investment contracts existed despite the fact that the transactions carried unconditional promises to repay and fixed rates of return. In that case, a trade school sold Federally Insured Student Loan (FISL) notes to a credit union, accompanied by promises to service the loans and to buy back some of the notes upon adequate notice. There was no argument that the notes themselves were securities under the "note" component of the federal act's definition of a security. *Id.* Instead, the court focused on the transactions between the trade school and the credit union in their entireties, including the service and buyback promises, in order to determine whether they constituted investment contracts. *Id.* The court held that the transactions were investment contracts, noting that the transactions placed the credit union in a passive role and that the credit union's success was dependent upon the trade school's ability to maintain its accreditation for FISL packages and its continued ability to pay loan refunds to students who dropped out prior to completing their schooling. *Id.*

Observing the economic realities of the transactions at hand, the investors expected a return on their money akin to an investment return. The investors testified that they never employed their own management skills to the funds. They testified that they were never under the impression that the funds were commercial loans or loans for Gertsch's personal use. The investors relied upon Gertsch's efforts, and they were completely passive with regard to attracting new investors and securing payment from those who had promised to invest. They incurred substantial risk, despite the promise of a fixed rate of return. Although the promise of a fixed rate of return could preclude a finding of an investment in some circumstances, the extremely high rate promised by

Gertsch—the equivalent of one hundred percent annually in some cases—demonstrates that these transactions were something more than loans or savings account deposits. At best, the extremely high rates of return promised by Gertsch can be viewed as some sort of limit or cap on the profits that could be expected from the venture.

The record contains sufficient evidence to support the jury's finding that the investors sought the return of profits to be made from the entrepreneurial or managerial efforts of others.

**B. Gertsch's Conviction And Sentence For Racketeering Are Vacated, But Her Conviction For Money Laundering, Under I.C. § 18–8201(2), Is Affirmed.**

█ The State has conceded that there was no "enterprise" to support Gertsch's conviction for racketeering under I.C. § 18–7804(c). Consequently, that conviction and sentence are vacated.

Gertsch was charged with money laundering in violation of I.C. § 18–8201(2), which provides:

> It is unlawful for any person to knowingly or intentionally direct, plan, organize, initiate, finance, manage, supervise, or facilitate the transportation or transfer of proceeds known by that person to be *derived from a pattern of racketeering activity as defined in section 18–7803(d), Idaho Code,* or a violation of the provisions of chapter 27, title 37, Idaho Code.

I.C. § 18–8201(2) (emphasis added). Gertsch argues that, because the State has conceded that her racketeering conviction under I.C. § 18–7804(c) should be reversed, there can be no "pattern of racketeering activity" to support the money laundering conviction.

However, I.C. § 18–7804(c) is irrelevant to the above-quoted language of I.C. § 18–8201(2), which hinges on the definition of "pattern of racketeering activity," contained in I.C. § 18–7803(d). "Pattern of racketeering activity" means:

> ... engaging in at least two (2) incidents of *racketeering conduct* that have the same or similar intents, results, accomplices, vic-

tims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one (1) of such incidents occurred after the effective date of this act and that the last of such incidents occurred within five (5) years after a prior incident of racketeering conduct.

I.C. § 18–7803(d) (emphasis added). "Racketeering" is defined as:

> ... any act which is chargeable or indictable under the following sections of the Idaho Code or which are equivalent acts chargeable or indictable as equivalent crimes under the laws of any other jurisdiction:
>
> . . . .
>
> (13) Securities (sections 30–1403, 30–1403A, 30–1404, 30–1405, 30–1406, 30–1438 and 30–1439, Idaho Code);

I.C. § 18–7803(a).

Because we affirm Gertsch's securities convictions under I.C. §§ 30–1403 and 30–1406, she has engaged in conduct that is "racketeering," under the definition contained in I.C. § 18–7803(a). Additionally, because she engaged in such activity at least twice, because the instances are all interrelated, and because the instances all occurred within five years of each other, a "pattern of racketeering activity" existed under I.C. 18–7803(d). Consequently, Gertsch's money laundering conviction, under I.C. § 18–8201(2), is affirmed.

**C. Gertsch's Claim That Her Due Process Right To A Fair Trial Was Violated Will Not Be Addressed For The First Time On Appeal.**

Gertsch argues that she was deprived of her due process "right to a fair trial" under the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, section 13 of the Idaho Constitution, when the victim/witnesses were allowed to remain in the courtroom while other witnesses were testifying and when the State's expert witness testified as to "matters of law." The State's expert testified as to the scope of securities disclosures required by law as well as the definitions of "enterprise" and "securi-

ty." He also testified that, in this case, an "enterprise" existed and that the transactions at issue did involve the sale of securities.

Gertsch's argument that victim/witnesses should have been excluded runs contrary to those victims' constitutional right to be present at Gertsch's trial. "A crime victim, as defined by statute, has the following rights: ... (4) To be present at all criminal justice proceedings." Idaho Const. art. I, § 22. Title 19, chapter 53 of the Idaho Code recognizes this constitutional right with provisions paralleling Article I, § 22, and it defines a victim as "a person or entity, who suffers economic loss or injury as the result of the defendant's criminal conduct. . . ." I.C. § 19–5304. Idaho Rule of Evidence 615, which generally provides for the exclusion of witnesses upon the request of a party, also recognizes this right by providing that "[t]his rule does not authorize exclusion of . . . (4) a crime victim whose exclusion is prohibited under Article I, Section 22 of the Idaho constitution." This Court will not address the extent, if any, to which Gertsch's asserted constitutional "right to a fair trial" conflicts with the constitutional right of victims to be present during the trial, because Gertsch failed to preserve this issue, as well as the issue regarding the expert's testimony on "matters of law," for appeal.

■ Gertsch never objected to these occurrences, and she did not move the trial court for any affirmative relief based upon them. "The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal." *State v. Robbins*, 123 Idaho 527, 529, 850 P.2d 176, 178 (1993). Gertsch cites *Robbins* for the proposition that the denial of due process is a fundamental error that may nonetheless be presented for the first time on appeal.

In *Robbins*, this Court explained that it "will consider fundamental error in a criminal case, even though no objection was made at trial." 123 Idaho at 529, 850 P.2d at 178. The Court explained that fundamental error is "[a]n error that goes to the foundation or basis of a defendant's rights." *Id.* The Court found that the imposition of a vindictive sen-

tence on remand was fundamental error. *Id.* at 530, 850 P.2d at 179. The *Robbins* Court relied on *State v. Kenner*, in which this Court held that a violation of a defendant's privilege against self-incrimination was fundamental error going to the foundation or basis of a defendant's rights. *Robbins* at 530–31, 850 P.2d at 178–79 (citing *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992)).

■ In this case, Gertsch points to no controlling authority for the proposition that allowing witnesses to remain in the courtroom to observe the testimony of other witnesses affects the foundation or basis of her due process right to a "fair trial" in the same manner as the violations of a defendant's privilege against self-incrimination and right to be free of vindictive sentencing, found in *Robbins* and *Kenner*. The jury was present to observe the testimony and demeanor of all of the victim/witnesses and to judge their credibility, taking into consideration the amount, if any, by which their testimony may have been influenced by a desire to characterize the transactions in accordance with the expert's testimony or to harmonize their testimony with that of prior witnesses.

■ Neither has Gertsch pointed to any controlling authority for the proposition that expert testimony that touches on a matter of law affects the foundation or basis of a defendant's rights. She had the right to confront and cross-examine the expert to demonstrate the impropriety or inaccuracy of his testimony. Moreover, the district court instructed the jury as to the law regarding the matters the expert testified about, and he made it clear that his instructions were the only interpretation of the law that the jury was to apply to the case.

Gertsch cites *State v. Hester* in support of her argument that the expert's testimony regarding the definition and existence of a security improperly invaded the province of the jury. 114 Idaho 688, 760 P.2d 27 (1988). In *Hester*, a case dealing with lewd conduct with a child, this Court held that the expert testimony of a psychologist and a social worker improperly invaded the province of the jury, insofar as they testified as to their

opinion that the defendant was the person who had sexually abused the child. 114 Idaho at 695, 760 P.2d at 34. However, the defendant did not fail to preserve that issue for appeal in *Hester,* and the Court did not hold or indicate that an expert's intrusion upon the province of the jury was fundamental error that may be raised for the first time on appeal. *Id.*

Neither the presence of victim/witnesses during trial, nor the un-objected-to testimony of the State's expert witness, affected the foundation or basis of Gertsch's rights in this case. Therefore, this Court will not address these issues for the first time on appeal.

## D. The Indictment For Money Laundering Will Not Be Vacated Due To Defects In The Racketeering Indictment.

Gertsch argued in her original brief that her racketeering and money laundering convictions should be reversed due to defects in the racketeering indictment. This argument is irrelevant with regard to the racketeering conviction because the State has conceded that the racketeering conviction should be reversed for lack of evidence. As to the money laundering offense, Gertsch's argument was based on her theory that the money laundering conviction could not stand if the racketeering conviction was reversed due to a faulty indictment. As noted above, the money laundering conviction can be upheld independently of the racketeering conviction. Consequently, any defects in the racketeering indictment are irrelevant to the money laundering conviction.

## E. Gertsch's Sentences Are Affirmed, Except For The Sentence Related To The Racketeering Conviction.

Because we vacate Gertsch's racketeering conviction and the related sentence, the longest of the remaining concurrent sentences is ten years with three years fixed.

▮▮▮▮ Gertsch argues that her sentences are unduly harsh, and therefore an abuse of discretion, in light of her age, as well as her "prior history of compliance with the law and also the extraordinary stresses

she was under prior to and during the time" of the offenses.

Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. To constitute an abuse of discretion, the sentence must be shown to be excessive under any reasonable view of the facts. A sentence is reasonable if at the time of imposition it appears necessary to achieve the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to the given case. For the purpose of sentencing review, this Court considers the minimum period of incarceration to be the probable measure of confinement.

*State v. Lundquist,* 134 Idaho 831, 836, 11 P.3d 27, 32 (2000) (internal citations omitted). Gertsch must show that a minimum term of confinement of three years is unreasonable and therefore an abuse of discretion. The evidence showed that Gertsch had told a long string of lies in order to convince people to give her money for an alleged investment program. Eventually, she deprived her victims of a total of approximately $130,000. Some of the victims were facing "extraordinary stresses" akin to those Gertsch claims to have been facing. She convinced many of the victims to cash in their retirement accounts and college savings accounts held for their children. Some victims completely exhausted their credit card limits by way of cash advances in amounts exceeding $10,000, at an annual interest rate of 36%.

Gertsch has failed to meet her burden to show that her three-year minimum sentence is excessive under any reasonable view of the facts. She has not shown that her sentence fails to serve the objective of protecting society or fails to achieve any or all of the related goals of deterrence, rehabilitation or retribution.

## IV.

## CONCLUSION

The record contains sufficient evidence to support the jury's finding that Gertsch sold investment contracts. Gertsch's racketeer-

ing conviction is vacated, but her money laundering conviction can stand independently of her racketeering conviction. The trial errors alleged by Gertsch do not raise issues of fundamental error; therefore, they will not be considered for the first time on appeal. The sentence of ten years with three years fixed was not an abuse of the trial court's discretion. Gertsch's convictions and sentence, except for her conviction and sentence for racketeering under I.C. § 18–7804(c), are affirmed.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.