# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 42758/42759

STATE OF IDAHO,       )
)
    **Plaintiff-Respondent,**    )
)
v.       )
)
CESAR A. SEPULVEDA,    )
)
    **Defendant-Appellant.**    )
)
)

**Boise, June 2016 Term**

**2016 Opinion No. 123**

**Filed: November 3, 2016**

**Stephen W. Kenyon, Clerk**

_____

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

District court judgment of conviction and sentencing, <u>affirmed.</u>

Eric Fredericksen, Interim State Appellate Public Defender, Boise, for appellant. Brian R. Dickson, argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Theodore S. Tollefson, Deputy Attorney General argued.

_____

BURDICK, Justice

Cesar Antonio Sepulveda appeals from the Ada County District Court's judgment after a jury found him guilty of felony intimidating a witness, misdemeanor domestic battery, injury to a child, and two counts of attempted violation of a no contact order. Sepulveda contends that his right to confront witnesses, his right to present a defense, and his right to be free from double jeopardy were violated and that his convictions should be vacated. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 2013, officers responded to a 911 call placed by Connie Grainger. In the call, Grainger reported that she had heard a loud bang and yelling from Sepulveda's apartment, which shares a wall with Grainger's. When the officers arrived, they found a pipe and some methamphetamine in Sepulveda's pants pocket. Sepulveda told the officers that the pipe and methamphetamine belonged to his girlfriend, L.M., and that she had attacked him after he confronted her about her drug use. L.M. told officers that she had confronted Sepulveda about feeding the children, that she and Sepulveda then got into an argument, and that during the

1

argument Sepulveda attempted to strangle her. Sepulveda was arrested and ultimately charged with attempted strangulation and misdemeanor injury to a child.[1] A no contact order was also entered prohibiting Sepulveda from contacting L.M.

While in custody, Sepulveda called L.M.'s sister and was recorded asking her to contact L.M. and tell L.M., among other things, not to appear in court. Sepulveda was also recorded contacting Lisa Cameron, a cellmate's wife, and asking her to contact L.M. and tell L.M. that if L.M. did not show up at the preliminary hearing the charges would be dropped. These calls resulted in Sepulveda being charged with felony intimidating a witness and two counts of attempted violations of a no contact order.

L.M. testified during a preliminary hearing that Sepulveda took her by the neck, got on top of her, and choked her with two hands. On cross-examination, L.M. was asked whether she had ever harmed herself and whether she had used methamphetamine a few days prior to the day of the incident. Both of these lines of questioning were objected to for relevance and the court sustained both objections.

Several months after the December 27, 2013, incident but prior to trial, L.M. committed suicide by overdosing on methamphetamine and two other drugs for which she had prescriptions. As a result, the State filed a pretrial motion to admit L.M.'s preliminary hearing testimony at trial. Sepulveda objected, contending that he had not had an adequate opportunity to cross-examine L.M. during the preliminary hearing regarding issues that impacted her credibility, namely, her history of drug use and her history of self-abuse. The district court, finding that Sepulveda had an adequate opportunity to cross-examine L.M., granted the State's motion. The State also moved to exclude any reference to the cause of L.M.'s death during the trial. Sepulveda objected, contending that the cause of death was relevant to his theory of defense. The State argued that L.M.'s suicide was irrelevant to the trial. Agreeing with the State, the district court granted the State's motion.

The jury found Sepulveda guilty of domestic battery, injury to a child, intimidating, impeding, influencing, or preventing the attendance of a witness, and two counts of attempted violation of a no contact order. Sepulveda timely appeals.

---

[1] Sepulveda was originally also charged with possession of a controlled substance and possession of drug paraphernalia, but these charges were ultimately dropped.

## II. STANDARD OF REVIEW

Sepulveda's claims are constitutionally based. "The requirements of the Idaho and U.S. Constitutions are questions of law, over which this Court has free review." *State v. Draper*, 151 Idaho 576, 598, 261 P.3d 853, 875 (2011).

## III. ANALYSIS

Sepulveda contends his constitutional rights to confront witnesses against him, to present a defense, and to be free from double jeopardy were violated in the lower court proceedings. We address each claim in turn.

### A. Sepulveda's right to confront the witnesses against him was not violated.

The Sixth Amendment to the United States Constitution provides that a criminal defendant has "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. " 'This provision bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " *State v. Richardson*, 156 Idaho 524, 528, 328 P.3d 504, 508 (2014) (quoting *Davis v. Washington*, 547 U.S. 813, 821 (2006)). Testimonial statements include "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial . . . ." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Confrontation Clause "is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

There is no dispute that L.M.'s statements at the preliminary hearing were testimonial or that L.M. was unavailable to testify at the trial. As such, the only issue is whether Sepulveda had a prior adequate opportunity to cross-examine L.M.

In *Richardson*, we stated:

> *Crawford* did not specifically address what constitutes an 'adequate' opportunity for cross-examination, but the cases the [U.S. Supreme] Court cited, *Pointer*, *Green*, and *Mancusi*, do provide some guidance in assessing whether an adequate opportunity has been afforded. There are three indicators of an adequate opportunity for cross-examination based on U.S. Supreme Court case law. The first indication of an adequate opportunity to cross-examine is representation by counsel. A second indication is no significant limitation in any way in the scope or nature of counsel's cross-examination. The third indication is counsel's failure to show any new and significantly material line of cross-examination that was not at least touched

3

upon in the preliminary hearing. These three factors are illustrative and not meant to be exhaustive or exclusive in the determination of the adequacy of cross-examination under the Confrontation Clause. Whether a party had an adequate opportunity to cross-examine is determined on a case-by-case basis.

*Richardson*, 156 Idaho at 528–29, 328 P.3d at 508–09 (alteration in original) (citations and internal quotation marks omitted). Additionally, we have stated that " 'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' " *State v. White*, 97 Idaho 708, 713, 551 P.2d 1344, 1349 (1976) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).

Sepulveda contends that his right to confront the witnesses against him was violated because he was limited in his cross-examination of L.M. during the preliminary hearing and was "not afforded the opportunity to question L.M. about potential sources of bias or motives to testify falsely." Specifically, Sepulveda argues that he was restricted in his cross-examination of L.M. when the trial court sustained a relevance objection to his question regarding whether L.M. had used methamphetamine a few days prior to the day of the alleged incident.[2] Sepulveda contends that by sustaining the objection the court prevented him from cross-examining L.M. about her methamphetamine use and cut off his ability to question L.M. about "this source of bias and motive to testify falsely against him." The full exchange was as follows:

> **Q:** Now, you said that you hadn't used any methamphetamine that day. Had you a few days prior to that?
> **A:** Yes.
> **Prosecution:** Objection, relevance.
> **Defense:** I think it is relevant, Judge, as to her state of mind.
> **The Court:** A few days prior?
> **Defense:** Yes.
> **The Court:** I will sustain the objection.

Sepulveda asserts that his case is similar to *White*. In that case, the defendant was charged with kidnapping. On cross-examination of the victim, defense counsel sought to explore the relationship of the victim with her parents to demonstrate that the relationship was strained and that because of that strain she was motivated to lie about being kidnapped by the defendant. *White*, 97 Idaho at 712–13, 551 P.2d at 1348–49. However, the trial judge, on his own motion, cut short the cross-examination before defense counsel could fully explore the extent of the strain

---

[2] On appeal, Sepulveda does not challenge the trial court's ruling regarding the line of questioning regarding L.M.'s history of self-harm.

4

or the effect the strain of the relationship would have had on the victim's motivation to lie. *Id.* at 713 & n.6, 551 P.2d at 1349 & n.6. We held that it was error for the trial judge to cut off "cross-examination on an important credibility issue before the issue could be properly developed." *Id.* at 713, 551 P.2d at 1349.

Here, defense counsel asked L.M. if she used methamphetamine "a few days prior" to December 27, 2013. When the prosecution objected on relevance grounds, defense counsel responded that it was relevant "as to her state of mind." The court then asked, "A few days prior?" to which defense counsel responded, "Yes." Based on this exchange, it is clear that the defense's question was attempting to establish L.M.'s state of mind a few days prior to the incident, not to call into question L.M.'s credibility or motivation to fabricate the assault on the day of the incident. Unlike in *White*, the court did not cut short the line of questioning sua sponte. Rather, the line of questioning was objected to by the prosecution and the defense was given an opportunity to respond as to why the question was relevant. Defense counsel's full response was that the question was relevant to show L.M.'s state of mind a few days prior to the incident. Without offering more, it is difficult to conceive how the victim's state of mind a few days prior to the alleged battery could possibly be relevant to determining whether it was more or less probable that Sepulveda was guilty of domestic battery. Moreover, there is nothing in the exchange or the court's sustaining of the relevance objection that prevented defense counsel from exploring L.M.'s credibility, motivation to testify, or whether L.M. had used drugs during the incidents that form the basis of Sepulveda's criminal charges, nor did defense counsel attempt to make any such inquiry. Defense counsel was only prevented from asking about L.M's prior drug use in relation to her state of mind a few days prior to the day in question. Defense counsel was still free to question L.M. about her drug use on the day of the incident and to seek other testimony related to L.M.'s drug use for credibility or motive purposes.

Sepulveda also asserts that he would have confronted L.M. at trial with a new and significantly material line of cross-examination. He claims that "there was evidence that L.M. had methamphetamine and other unprescribed drugs in her system on the day of the incident." Sepulveda claims this evidence would refute L.M.'s denial regarding methamphetamine use on the day of the incident and go to her credibility as a witness. In support of this assertion, Sepulveda points to testimony given by defense counsel at trial: "Well, Your Honor, there's other evidence that she, at the time of this incident, had methamphetamine in her system and

5

other drugs that weren't prescribed to her." Although it is true that defense counsel references evidence of drugs being in L.M.'s system "on the day of the incident," this statement was made in the context of a discussion about how to handle the fact that L.M. had committed suicide by drug overdose. It is clear in this exchange that the "day of the incident" is June 9, 2014, the day of L.M.'s suicide, not December 27, 2013, the day of the argument and physical altercation between Sepulveda and L.M. This is not evidence that would support a new and significantly material line of cross-examination. L.M. already testified in the preliminary hearing that she had not used methamphetamine on December 27, 2013, and evidence that she used methamphetamine to commit suicide months later does not dispute this.

Sepulveda further argues that had he been allowed to continue with the line of questioning about L.M.'s drug use that he would have been able to impeach her testimony on direct examination that "she also denied the use of methamphetamines or any other types of illegal substances." However, L.M. only denied using methamphetamine on the day of the incident. Indeed, when asked about using methamphetamine a few days prior she responded "Yes" before the prosecution objected. There is no evidence to suggest that Sepulveda would have been able to produce any evidence to dispute L.M.'s testimony that she did not use methamphetamine on the day of the incident. Sepulveda's statement that he would have been able to impeach her testimony about her drug use is purely speculation and conjecture. *State v. Ranstrom*, 94 Idaho 348, 352, 487 P.2d 942, 946 (1971) ("Appellant points out no facts to support this contention and it is based on nothing but conjecture and speculation. Therefore this court will not consider this issue.").

Ultimately, while Sepulveda may have preferred to have questioned L.M. in the preliminary hearing about her drug use on the day of the incident or in relation to her motivation to lie and her credibility rather than about her drug use in relation to her state of mind "a few days prior," he did not. *Richardson*, 156 Idaho at 529, 328 P.3d at 509 ("[Defendant] may have preferred to be more aggressive or thorough with his cross-examination at the preliminary hearing had he known that [the witness] would become unavailable, but the Confrontation Clause requires only an adequate opportunity for cross-examination of a witness, not a perfect one."); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

In summary, the trial court's sustaining of the prosecution's relevance objection to a question related to L.M.'s state of mind and drug use a "few days prior" did not limit Sepulveda from questioning L.M. about her drug use on the day of the incident or in relation to her credibility or motivation to lie. Furthermore, Sepulveda failed to produce any evidence that demonstrated that he would have presented a new and material line of examination at trial. Based on these reasons, we hold that Sepulveda's Sixth Amendment right to confront the witnesses against him was not violated by the admission of L.M.'s preliminary hearing testimony at trial.

**B. Sepulveda's right to present a defense was not violated.**

The right to present a defense is rooted in the Confrontation Clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, and includes the right to offer testimony of witnesses, to compel their attendance, and to present the defendant's version of the facts. *State v. Meister*, 148 Idaho 236, 239, 220 P.3d 1055, 1058 (2009); *see also, e.g.*, *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, " '[a] defendant has no right to present irrelevant evidence and even if evidence is relevant, it may be excluded in certain cases.' " *Meister*, 148 Idaho at 241, 220 P.3d at 1060 (quoting *State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003)); *see also, e.g.*, *Delaware v.Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Torres*, 937 F.2d 1469, 1473 (9th Cir. 1991).

Sepulveda argues that his right to present a defense was violated because he was not allowed to present evidence to support his theory of defense. At trial, Sepulveda's theory of defense was that he discovered methamphetamine and a pipe in the house and that when he confronted L.M. about the methamphetamine and pipe L.M. responded by assaulting him. Specifically, Sepulveda contends that his right to present a defense was violated when the magistrate court sustained the prosecution's objection regarding the defense's question about L.M.'s methamphetamine use a few days prior to the day of the incident and when the district court declined to allow the defense to introduce evidence that L.M.'s cause of death was an overdose on methamphetamine and two other drugs.

1. **The question regarding L.M.'s drug use a "few days prior."**

As an initial argument, the State argues that because Sepulveda never requested the district court to decide whether the magistrate court had erred in sustaining the prosecution's objection regarding the question regarding L.M.'s methamphetamine use a "few days prior," he is barred from raising the issue on appeal. *State v. Gertsch*, 137 Idaho 387, 395, 49 P.3d 392, 400

(2002) ("'The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal.'" (quoting *State v. Robbins*, 123 Idaho 527, 529, 850 P.2d 176, 178 (1993)).

Sepulveda asserts that his request for the district court to rule on the admissibility of L.M.'s preliminary hearing testimony is sufficient to serve as a request for the district judge to also rule on whether the magistrate court's evidentiary rulings were correct. Sepulveda is incorrect.

The district court was asked to determine whether the preliminary transcript was admissible pursuant to Idaho Code section 9-336 (now Idaho Code section 74-125) and Idaho Rule of Evidence 804(b)(1). Idaho Code section 9-336 provided:

> Prior to admitting into evidence recorded testimony from a preliminary hearing, the court must find that the testimony offered is:
>
> 1. Offered as evidence of a material fact and that the testimony is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>
> 2. That the witness is, after diligent and good faith attempts to locate, unavailable for the hearing; and
>
> 3. That at the preliminary hearing, the party against whom the admission of the testimony is sought had an adequate opportunity to prepare and cross-examine the proffered testimony.

Ch. 51, § 2, 1989 Idaho Sess. Laws 63, 64.

Rule 804(b)(1) excludes from the hearsay rule

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is no offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Neither the statute nor the rule provides that the district court must consider the correctness of evidentiary rulings made during the preliminary hearing in deciding whether the transcript of a witness's testimony is admissible. Likewise, neither the statute nor the rule prevents making objections to specific testimony within the preliminary hearing transcript if the court rules that the transcript is admissible.

8

Sepulveda's sole argument to the district court regarding the question about L.M.'s drug use a few days prior to the day of the events in question centered on whether Sepulveda had an adequate opportunity to cross-examine L.M. Defense counsel stated:

> She also denied any use of methamphetamine or any other types of illegal substances. And there was an objection to that when asked if she had been using earlier in the week. Se we weren't able to explore that further and perhaps develop more of a credibility issue.

There was no argument or assertion that the magistrate court's action in sustaining the objection regarding L.M.'s use of drugs earlier in the week was in error. The assertion was that the sustaining of that objection somehow prevented the defense from further exploring L.M.'s use of methamphetamine or other types of illegal substances at other times.[3] The district court was not asked to decide, and it did not decide, whether the magistrate court erred in its evidentiary ruling regarding the question about L.M.'s drug use "a few days prior" to the incidents that form the basis of Sepulveda's criminal charges. Therefore, we will not consider this issue on appeal. *Gertsch*, 137 Idaho at 395, 49 P.3d at 400.

### 2. L.M.'s cause of death.

Sepulveda argues that the cause of L.M.'s death, overdose on methamphetamine and two other prescribed drugs, was relevant because it "impacts the credibility of her testimony that she had not used methamphetamine." However, as previously mentioned, L.M. only testified that she had not used methamphetamine on the day of the incident, she admitted to using methamphetamine a few days prior to the incident. Thus, evidence that she used methamphetamine seven months later as part of a concoction of drugs to commit suicide is not relevant to her credibility as it does not prove that she used methamphetamine on the day of the incident and she did not testify that she had never used methamphetamine—indeed, as noted earlier, she admitted to using it when asked. Consequently, evidence of the cause of L.M.'s death would not have impeached L.M.'s testimony or supported any motivation she may have had to lie. The district court did not err when it ruled that the cause of L.M's death was irrelevant.

Therefore, because L.M.'s cause of death was irrelevant, Sepulveda's right to present a defense was not violated. *Meister*, 148 Idaho at 241, 220 P.3d at 1060 ("If [evidence] is not relevant, the defendant has no constitutional right to present it.").

---

[3] This assertion is addressed earlier in Part A.

**C. Sepulveda was not subjected to double jeopardy under the Idaho Constitution.**

Sepulveda claims that his convictions for intimidating a witness and for the two attempted violations of a no contact order violate the double jeopardy clause of the Idaho Constitution. Specifically, Sepulveda argues that the felony intimidating a witness charge is an included offense of the attempted violations of a no contact order and is therefore "subsumed" into the attempted no contact order violations and should be vacated.

The double jeopardy clause of the Idaho Constitution states: "No person shall be twice put in jeopardy for the same offense." IDAHO CONST. art. I, § 13. "This protection applies not only to multiple punishments, but also to multiple prosecutions for the same crimes." *State v. Manley*, 142 Idaho 338, 343, 127 P.3d 954, 959 (2005). Thus, we have held that under the "Idaho double jeopardy clause[], 'a defendant may not be convicted of both a greater and lesser included offense.' " *State v. McKinney*, 153 Idaho 837, 841, 291 P.3d 1036, 1040 (2012) (quoting *State v. Pizzuto*, 119 Idaho 742, 756, 810 P.2d 680, 694 (1991), *overruled on other grounds by State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991)). In Idaho, "[t]here are two theories under which a particular offense may be determined to be a lesser included offense of a charged offense." *State v. McIntosh*, 160 Idaho 1, __, 368 P.3d 621, 624 (2016) (quoting *State v. Sanchez-Castro*, 157 Idaho 647, 648, 339 P.3d 372, 373 (2014)); *see also, e.g.*, *State v. Flegel*, 151 Idaho 525, 527, 261 P.3d 519, 521 (2011); *State v. Curtis*, 130 Idaho 522, 524, 944 P.2d 119, 121 (1997).

The first theory is the statutory theory. " 'Under this theory, one offense is not considered a lesser included of another unless it is necessarily so under the statutory definition of the crime.' " *Sanchez-Castro*, 157 Idaho at 648, 339 P.3d at 373 (quoting *State v. Thompson*, 101 Idaho 430, 433, 614 P.2d 970, 973 (1980)). "We apply the *Blockburger* test, which originated in *Blockburger v. United States*, 284 U.S. 299, (1932), to determine whether an offense is a lesser included offense under the statutory theory." *Flegel*, 151 Idaho at 527, 261 P.3d at 521.

The second theory is the pleading theory. This theory arose out of our holding in *State v. Anderson*, wherein we held "that pursuant to I.C. § 19-2312, any offense, the commission of which is necessarily included in that charged in the indictment or information, is an included offense." 82 Idaho 293, 303, 352 P.2d 972, 978 (1960). Thus, we have held on several occasions that under the pleading theory, a crime is considered an included offense " 'if it is alleged in the information [or indictment] as a means or element of the commission of the higher offense.' "

10

*See, e.g.*, *Sanchez-Castro*, 157 Idaho at 648, 339 P.3d at 373 (quoting *Flegel*, 151 Idaho at 529, 261 P.3d at 523); *Thompson*, 101 Idaho at 434, 614 P.2d at 974.

Sepulveda only raises a claim under the double jeopardy clause of the Idaho Constitution and the pleading theory.[4] Under the pleading theory, Sepulveda argues that "the intimidating charge is the means by which each attempt to violate the no contact order charges were committed," and thus "the intimidating a witness charge violated the Idaho Constitution's protection against double jeopardy."

"Under Idaho's pleading theory, whether one crime is a lesser included offense of another crime can be determined from the face of the record simply by reading the information charging each crime." *McKinney*, 153 Idaho at 841, 291 P.3d at 1040. Here, the face of the record shows that, as pled, felony intimidating a witness is not an included offense of the attempted violations of a no contact order.

The information, as amended, states:

### COUNT I

That the Defendant CESAR ANTONIO SEPULVEDA, on or between the 29th day of December, 2013 and the 14th day of January, 2014, in the County of Ada, State of Idaho, did willfully intimidate, influence, impede, deter, obstruct, or prevent, and or did attempt to intimidate, influence, impede, deter, obstruct, or prevent a witness, potential witness, and/or person the Defendant believes to be a witness, from testifying freely, fully and truthfully in a criminal proceeding, to-wit: Ada County case number CR-FE-2013- 0018132, in which the Defendant was charged with the crimes of Attempted Strangulation and Possession of a Controlled Substance, by asking another person and/or persons to speak with [L.M.] and ask her to tell the court that she injured herself, that the allegations of attempted strangulation are false, and/or that her medications are to blame for what happened, and/or to direct her not to appear for court.

### COUNT II

That the Defendant CESAR ANTONIO SEPULVEDA, on or about the 30th day of December, 2013, in the County of Ada, State of Idaho, attempted to have contact with [L.M] in violation of a no

---

[4] We do not provide analysis under the statutory theory or the United States Constitution because Sepulveda does not raise those issues as grounds for his double jeopardy claim. *State v. Hoisington*, 104 Idaho 153, 159, 657 P.2d 17, 23 (1983) ("Since neither party has raised or argued this issue in their briefs, we do not review the issue."). However, we briefly note that a double jeopardy claim under the statutory theory or the United States Constitution would fail the *Blockburger* test. *Compare* I.C. § 18-920 (listing the statutory elements for "Violation of no contact order"), *with* I.C. § 18-2604 (providing the statutory elements for "Intimidating a witness").

contact order issued in Ada County case number CR-FE-213-0018132, where the Defendant was charged with the offense of Attempted Strangulation, by calling [L.M.'s] sister and asking her to pass certain messages on to [L.M.].

COUNT III

That the Defendant CESAR ANTONIO SEPULVEDA, on or about the 2nd day of January, 2014, in the County of Ada, State of Idaho, attempted to have contact with [L.M.] in violation of a no contact order issued in Ada County case number CR-FE-213-0018132, where the Defendant was charged with the offense of Attempted Strangulation, by calling a Lisa Cameron and asking her to contact L.M. on his behalf.

From the face of the information, not all the elements of intimidating a witness are pled in the counts charging the attempted violations of the no contact order. Count I, which pleads the intimidating a witness charge, states that Sepulveda "did willfully intimidate, influence, impede, deter, obstruct, or prevent, and or did attempt to intimidate, influence, impede, deter, obstruct, or prevent a witness . . . from testifying freely, fully and truthfully in a criminal proceeding . . . by asking another person and/or persons to speak with [L.M.] and ask her to tell the court that she injured herself, that the allegations of attempted strangulation are false, and/or that her medications are to blame for what happened, and/or to direct her not to appear for court." In Count II, the means by which Sepulveda committed attempted violation of a no contact order was by contacting "[L.M.'s] sister and asking her to pass certain messages on to [L.M.]." In Count III, the means by which Sepulveda committed attempted violation of a no contact order was by contacting "Lisa Cameron and asking her to contact L.M. on his behalf." Neither Count II nor Count III makes reference to whether L.M. was a witness or whether Sepulveda "did . . . or did attempt to intimidate, influence, impede, deter, obstruct, or prevent [L.M.] . . . from testifying." Thus, felony intimidating a witness was not pled as a means or element of the commission of either of the attempted violations of a no contact order.

Accordingly, Sepulveda's argument fails, and we hold that Sepulveda's conviction for felony intimidating a witness is not an included offense of his convictions for the two attempted violations of a no contact order and does not violate the double jeopardy clause of the Idaho Constitution.

**D. Whether the doctrine of cumulative error requires reversal.**

12

"'Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. However, a necessary predicate to the application of the doctrine is a finding of more than one error.' " *State v. Parker*, 157 Idaho 132, 149, 334 P.3d 806, 823 (2014) (quoting *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010)). We find no error, and thus the doctrine of cumulative error does not apply.

## IV.    CONCLUSION

Because Sepulveda's right to confront witnesses, right to present a defense, and right to be free from double jeopardy were not violated, the judgment of the district court is affirmed.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**